## LINVILLE, Appellant, v. GREER.

### Division Two, November 26, 1901.

1. **Conveyances:** WIFE'S ACKNOWLEDGMENT IN 1852: BEFORE JUSTICE: TITLE CONVEYED. A justice of the peace had no authority, under the statute in 1852 (R. S. 1845, p. 225, sec. 35), to take a married woman's acknowledgment to a deed. Justices of courts having seals were the only justices that could do that, and as justices of the peace had no seal they were without authority to take a married woman's acknowledgment.

2. ———: ACKNOWLEDGED BY HUSBAND AND WIFE BEFORE JUSTICE: TITLE CONVEYED. A deed acknowledged by both husband and wife before a justice of the peace in 1852, did not pass the wife's title to her lands, but was sufficient to convey the husband's curtesy initiate.

3. ———: ACKNOWLEDGMENT BEFORE MAYOR OF KANSAS CITY. The mayor of the City of Kansas, under the act incorporating that city in 1853, had authority to take acknowledgments to deeds conveying lands lying outside the corporate limits of the city.

4. ———: ———: RESTRICTED AUTHORITY. Where, in an act incorporating a city, the mayor is "authorized to take acknowledgments

Linville v. Greer.

of deeds and all other instruments of writing affecting the title to lands and certify the same under the seal of the city," it will be held, in the absence of any provision restricting his authority to take acknowledgments to such lands only as lie within the city limits, that his authority was co-extensive with the county, as the acts of officers having seals generally are.

5. ——: MARRIED WOMAN'S ACKNOWLEDGMENT: "AS A PARTY THERETO." The validity of the deed of a married woman conveying her lands, dated in 1853, is not affected by the fact that the certifi‑ cate of acknowledgment omitted to say that she executed the deed "as a party thereto."

6. ——: DEEDS OF DOUBTFUL MEANING: CONSTRUCTION LESS FAVOR‑ ABLE TO GRANTOR: HEIRS CONVEYING MOTHER'S DOWER: HABENDUM CLAUSE. A deed should be construed in accordance with the intent of the parties thereto when such intent can be obtained from the instrument itself; and when its language will admit of two constructions the one less favorable to the grantor is to be adopted. So that if grantors describe the land as "two undivided ninth parts of all our mother's dower," it will be held that the intention of the parties was to convey the fee to two-ninths interest in the land subject to their mother's dower. This construction is less favorable to the grantor, and without it, as the grantors had no interest whatever in their mother's admeasured dower, the deed would be wholly inoperative. Besides, this view is enforced by the habendum clause, which says "To have and to hold the two undivided ninth parts of the above described real estate after the death of our mother," etc.

7. ——: ——: OFFICE OF HABENDUM. The habendum clause of a deed, if there is any doubt as to the intention of the parties, performs the office of defining, qualifying or controlling the granting clause when not in conflict with it.

8. ——: DEED BY MARRIED WOMAN WHILE A MINOR: DISAFFIRMANCE. A married woman who at the time she executed a deed was a minor, and therefore under the disability of coverture and infancy, is not obliged to take action to disaffirm the deed until the last disability is removed, however long it may last; and if she dies before either or both such disabilities are removed, the right to disaffirm does not die with her, but descends to her heirs, and can be exercised by them within ten years after her death, and if they sell their interest to another, he can within that time bring suit to recover the same.

9. ——: ——: ——: SILENCE. Mere silence, however long, or omission to act, is not an affirmance of a deed made in infancy or coverture.

10. ———: ———: INCUMBERED WITH DOWER: LIMITATION. Where a deed conveying the grantor's interest in inherited land, then incumbered with their mother's dower, was made by a married woman and her husband while she was yet a minor, and by another sister who married before she arrived at her majority, and they both remained under the disability of coverture until their death forty years afterwards, having never at any time in any way ratified or confirmed said deed, the heirs of each of them are entitled, under the statute of limitations, to ten years after their respective deaths in which to disaffirm said deeds, and can do so by an ordinary suit in ejectment, although the land has been held in adverse possession for more than thirty years since the termination of the dower.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus,* Judge.

REVERSED AND REMANDED.

*Sam'l P. Forsee* and *W. C. Forsee* for appellant.

(1)   The deed was acknowledged before a justice of the peace, and for this reason did not convey the wife's fee simple lands inherited from her father's estate.   Prior to 1855 the deed must have been acknowledged before a court of record, or some judge or clerk thereof.   Milling Co. v. Riley, 133 Mo. 574; Beal v. Harmon, 38 Mo. 439; Mitchell v. People, 46 Mo. 203; Bartlett v. O'Donohue, 72 Mo. 563; Goff v. Roberts, 72 Mo. 570; Frost v. Price, 7 Mo. 314; R. S. 1845, tit. "Conveyances," secs. 35, 37, 38, 39.   (2)   Having been executed, however, prior to 1865, it did convey James J. Priddy's estate by curtesy in his wife's lands; as to the husband, it was good whether acknowledged or not.   Beal v. Harmon, 38 Mo. 435; R. S. 1865, p. 464, sec. 14; Hord v. Thompson, 79 Mo. 101. The deed of Priddy and wife and Elizabeth Jones, acknowledged before Gregory, mayor, etc., did not convey the land of Mrs. Priddy.   Prior to 1855 it was required that she acknowledge the deed before a court of record, or some judge or clerk thereof.   See authorities point 1.   The act incorporating Kan-

sas City, in nowise changed this rule. It merely conferred upon the mayor, within the city, such powers concerning acknowledgments as justices of the peace had in their several jurisdictions. Laws 1851, p. 90, art. 3, sec. 6; Laws 1853, p. 244; R. S. 1845, art. 3, sec. 2, p. 695. The general terms used in the act incorporating the city, empowering the mayor to take "the acknowledgment of deeds," etc., did not repeal the special provisions contained in the general statutes concerning the conveyance by married women of their lands. Throughout the State, under the general statutes, the deed of a married woman was ineffectual as a conveyance of her lands, unless acknowledged before a court of record, or some judge or clerk thereof. Can it be said that the act incorporating Kansas City permitted such conveyance to be acknowledged before the mayor, and thus, by implication, repealed and upset the general policy of the State upon this point? State v. Bryant, 90 Mo. 534; St. Louis v. Laughlin, 49 Mo. 559; Railroad v. Shambaugh, 106 Mo. 575; State ex rel. v. St. Joseph, 116 Mo. 575; Musick v. Railroad, 114 Mo. 309; Payne v. Musick, 114 Mo. 531; Ex parte Marmaduke, 91 Mo. 254. But if the said act had become a law, the mayor of said city was given the powers of a justice of the peace only, and had no authority to take the acknowledgment of a married woman to a deed conveying her property, nor did he by said act have any power to take any acknowledgments to deeds conveying land outside of the city limits. The act says he shall be an ex-officio justice of the peace and have the same powers as a justice of the peace "within and for the city." Laws 1851, p. 90, sec. 6. The deed executed by Jas. J. Priddy, Nancy Priddy, and Elizabeth Jones, is void as to Mrs. Priddy because the mayor of Kansas City did not certify that she acknowledged that she executed said deed "as a party thereto." The statute (sec. 39, R. S. 1845), on conveyances, required the certificate to so state. "It can not be said that one condition is more important than another." Sarazin v. Railroad, 55

S. W. Rep. 94. (3) Conceding for argument only, that the deed to Coffman of 1853, alleged to have been acknowledged before Gregory, mayor, etc., was acknowledged before an officer competent to take the acknowledgment of a deed conveying the fee simple lands of the wife, yet we contend that it could operate only as a conveyance of the interests of the grantors in the dower or life estate of Mrs. Martha Jones, for such is the plain language of the deed. It is too clear for serious doubt that the parties, by the deed in question, intended to convey nothing more than their interests in their mother's life estate, for such is the necessary effect of the language used in the granting and descriptive clauses. Ford v. Church Soc., 120 Mo. 498; Canedy v. Marcey, 13 Gray, 373; Sarazin v. Railroad, 55 S. W. Rep. 94; Shayer v. Nichols, 55 Mo. 264; Jennings v. Breyzendine, 44 Mo. 332. (4) Both Mr. Priddy and Mrs. Linville were minors at the date of the deed of 1853 to Coffman, under which defendant claims title. Mrs. Linville (then Elizabeth Jones) was but seventeen years of age: she intermarried, when eighteen, with Linville. At the time (1868) of the termination of Mrs. Jones's dower estate, which was also the date at which defendant's grantors first asserted title to and claimed possession of the dower tract, Elizabeth Jones had become a married woman. No right or title or claim of adverse possession was ever asserted by defendant's grantors prior to the termination of the dower estate in 1868. At that date both women were married women, and both remained continuously under the disabilities of coverture until their respective deaths in 1892, their husbands surviving them. Conceding that, after marriage, they could have disaffirmed, yet it is clear upon the authorities that they could not, whether sole or married, disaffirm prior to attaining their majorities, and that they were not required to do so after becoming femes covert. At the date of the deed in 1853, Mrs. Priddy was under the double disability of infancy and coverture. When an adverse claim was first asserted by defendant's grantors

(1868), Elizabeth Jones had become a married woman. As both women were married women at the date the hostile claim was asserted, and continuously thereafter remained under such disability, they were not required, during such disability, to disaffirm their alleged deeds, and no adverse possession short of that required to complete a bar (ten years) under the statute of limitations could interfere with their right, or with the right of their heirs, to disaffirm the deeds after the termination of such disabilities. No laches is imputable to them because of the delay. There is not a scintilla of evidence tending to show confirmation. Indeed, nothing of the sort is claimed. Harris v. Ross, 86 Mo. 89; Yanse v. Norcum, 12 Mo. 563; Huth v. Carondelet, 56 Mo. 210; Lacy v. Pikler, 120 Mo. 388; Throckmorton v. Pence, 121 Mo. 59; Sim v. Everhart, 102 U. S. 300; Richardson v. Pate, 93 Ind. 423; Stringer v. Ins. Co., 82 Ind. 100; Sims v. Bardena, 86 Ind. 87; Miles v. Lingerman, 24 Ind. 385; Dodds v. Benthall, 4 Heisk. 601; Matthews v. Davis, 2 Caldw. 443; Williams v. Baker, 71 Pa. St. 476; Burch v. Linton, 78 Va. 584; Sims v. Smith, 86 Ind. 577; Vaughn v. Parr, 20 Ark. 600; Drake v. Ramsey, 5 Ohio 252; Cressinger v. Lessee Welch, 15 Ohio 156; Prant v. Wiley, 28 Mich. 164; Moore v. Abernathy, 7 Blacks 442; Gillespie v. Bailey, 12 W. Va. 76; Lindell v. Lindell, 142 Mo. 61. (5) The statute of limitation is no defense in this case. Dyer v. Brannock, 66 Mo. 422; Ramsey v. Otis, 133 Mo. 95; Smith v. Patterson, 95 Mo. 525; Miller v. Quick, 158 Mo. 503; Harris v. Ross, 86 Mo. 100; Beaume v. Chambers, 22 Mo. 36; Bell v. Harmon, 38 Mo. 435; Allen v. Ranson, 44 Mo. 265; Rothwell v. Jamison, 147 Mo. 601; Bradley v. Railroad, 91 Mo. 498; Dyer v. Wittler, 89 Mo. 81; Whitaker v. Whitaker, 157 Mo. 342; Campbell v. Laclede Gas Co., 84 Mo. 377; Arnold v. Willis, 128 Mo. 145; Miller v. Bledsoe, 61 Mo. 96; Roberts v. Nelson, 87 Mo. 229; Cary v. West, 139 Mo. 146; Osborn v. Weldon, 146 Mo. 185; Shumate v. Sny-

der, 140 .Mo. 77.   In this case, so far as the Priddy interests
are concerned, as Priddy's life estate terminated at his death
in 1896, he having survived his wife, the cause of action first
accrued to her children, and not to her.   They were entitled
to ten years from the death of their father within which to sue,
and such of them as are minors will be entitled to an additional
period.   Dyer v. Wittler, 89 Mo. 81; Harris v. Ross, 86 Mo.
89, 100; Ogle v. Hignet, 61 S. W. 596; Dyer v. Brannock,
66 Mo. 424; Osborn v. Weldon, 146 Mo. 185.   The thirty-
year statute has no application to this case.   It being the duty
of the life tenant to' pay the taxes assessed during the life
tenancy, there can be no forfeiture of the reversion because
they failed to pay taxes.   Howell v. Jump, 140 Mo. 457;
Black on Tax Titles, secs. 142, 146; Cooley on Taxation (2
Ed.), 467; Phelan v. Boylan, 35 Wis. 679; Varney v.
Stephens, 22 Mo. 331; Prettyman v. Wolston, 34 Ill. 191;
Olman v. Kelgore, 52 Iowa 38.   During the life estates of
Priddy and Linville, defendant and his grantors were in posses-
sion under claim of title.   Hence, it was their duty to pay the
taxes irrespective of the validity or invalidity of their claim.
Black on Tax Titles, sec. 146, and cas. cit.

, *James G. Smith* for respondent.

*BURGESS, J.*—This is an action of ejectment for the
possession of lots fourteen and fifteen of Independence Avenue
addition to Kansas City, Missouri.

The petition is in the usual form in such cases, and the
answer a general denial and a plea of the ten-year statute of
limitations.   Plaintiff replied to the answer denying all alle-
gations therein, and also alleging that one of the deeds in de-
fendant's supposed chain of title, claimed to have been executed
by James J. Priddy and Nancy A. Priddy and Elizabeth
Jones, was executed when Nancy A. Priddy was and ever since
has been the wife of James J. Priddy, and that at that time

both Nancy A. Priddy and Elizabeth Jones were minors under lawful age.

The case was tried by the court, a jury being waived. The trial resulted in a judgment for defendants, from which plaintiff, after unsuccessful motion for a new trial, appeals.

Both parties claim under one Thomas Jones, the plaintiff by deed from one of his grandchildren, and, the defendant by mesne conveyances.

Plaintiff testified that her mother's name was Elizabeth F. Jones, who married W. P. Linville in the year 1854; that they had five children; that her mother moved to California in May, 1853, with her sister, Mrs. Priddy, and husband, and died there in November, 1892. That neither her mother nor Mrs. Priddy ever returned to Missouri. That Mrs. Priddy had six children, the first one being born in 1852. That Mrs. Linville's first child was born in 1856. That George W. Priddy is a son of Nancy Priddy, whose mother Nancy, died in 1892. That her husband, James J. Priddy, died in 1896, and that her father is still living. That her mother was seventeen years old when she went to California. Had often heard Mrs. Priddy say so. That Mrs. Priddy left four children, her heirs at law, living at the time of her death, and Mrs. Linville five at the time of her death.

Mattie Linville testified substantially to the same effect.

In addition to this evidence the case was submitted upon the following agreed statement of facts:

"That at the time the deed recorded in book U at page 133, in the recorder's office of Jackson county, Missouri, on May 29, 1853, was executed and signed by James J. Priddy and Nancy A. Priddy, his wife, and Elizabeth F. Jones, said Nancy A. Priddy was the wife of James J. Priddy; that said Nancy A. Priddy and Elizabeth F. Jones were the daughters and lawful heirs of Thomas Jones, deceased, who, at his death, which occurred about the year 1843, was the owner of the southeast quarter of section 33, township 50, range 33, and

the southwest quarter of the southwest quarter of section 34, same township and range, in Jackson county, Missouri; that during the year 1852, the circuit court of said county and State caused to be set apart to Martha Jones, wife of said Thomas Jones, a dower interest in thirty-one acres off of the east side of the southeast quarter of the southeast quarter of said section thirty-three, township fifty and range thirty-three, and about twenty-two acres off of the west side of the southwest quarter of the southwest quarter of said section thirty-four, same township and range, in lieu of unassigned dower in the whole of Thomas Jones's land in said county and State; that Martha Jones took possession of and had possession of this tract of land, in which dower was assigned to her, until some time during the year 1868, about which time she died; that Nancy J. Priddy and Elizabeth Jones, the wife of William E. Linville, owned each an undivided one-ninth interest in all the land belonging to Thomas Jones at his death, which embraced the land assigned to Martha Jones as her dower, as above stated; the said Nancy A. Priddy and Elizabeth Jones were two of the nine heirs of said Thomas Jones, deceased, and that Nancy A. Priddy was lawfully married to James J. Priddy October 14, 1849, and they remained husband and wife living together as such until the year 1892, at which time Mrs. Priddy died. That in the year 1854, said Elizabeth Jones was lawfully married to William E. Linville, and they lived together as husband and wife until sometime during the year 1892, at which time Mrs. Linville died; that both James J. Priddy and Nancy A. Priddy died prior to the filing of this suit; that James J. Priddy's death occurred during the year 1896; that G. W. Priddy is the son of Nancy A. Priddy and James J. Priddy; that Jennie Linville is the daughter of Elizabeth Jones and William E. Linville, and the granddaughter of said Thomas Jones, deceased. That Independence Avenue addition is a part of and located in the southwest quarter of the southwest quarter of section thirty-four, township

fifty, and range thirty-three, in Jackson county, Missouri, and is located on said land assigned to Martha Jones for life as her dower in said estate; that defendants were at the time of the filing of this suit in sole possession of said property, claiming to be the exclusive owners, and at said times denied that plaintiff had any interest in said property; that defendants claim title to said property mentioned in plaintiff's petition through said deed recorded in said book U, at page 133, acknowledged by Nancy A. Priddy and Elizabeth Jones before W. S. Gregory as mayor of Kansas City aforesaid; that Jennie Linville owned at the time of the filing of this suit and now owns the interest in this property of G. W. Priddy, having acquired the same by warranty deed from said G. W. Priddy, son of said Nancy A. Priddy; that said Nancy Priddy and husband and said Elizabeth Jones moved from Kansas City, Missouri, about the fifth day of May, 1853, to the State of California and have never returned to the State of Missouri. It is further admitted that said defendants and their grantors have held open, notorious, exclusive and continuous possession of said lots from the date of the death (1868) of Martha Jones to the present time, and that neither plaintiff nor any one for her has paid the taxes on said land since the death of Martha Jones. It is further agreed that an abstract of title to said lots in question, if duly certified by a reputable abstracter, shall be accepted as prima facie evidence of the things therein stated. That at the time said Gregory took the acknowledgment to said deed recorded in book U, at page 133, neither the property in controversy (nor the land of Thomas Jones, aforesaid) was in the limits of Kansas City, Missouri."

It is also agreed that on August 31, 1887, Nancy Priddy and James J. Priddy, her husband, the makers of the deed acknowledged before Gregory, as mayor of Kansas City, executed and delivered to S. P. Forsee a power of attorney which asserted ownership of said property and authorized and directed said Forsee to bring suit for the makers of said deed

to recover said makers' interests in all the property belonging to Thomas Jones at his death, and that said power of attorney was recorded in the office of the recorder of deeds of Jackson county, Missouri, on the twenty-fifth day of November, 1887.

The power of attorney executed by James J. Priddy and Nancy, his wife, is dated August 31, 1887, and recorded' November 25, 1887. It recites among other things that they have certain property in Jackson county, to-wit, an interest in southeast quarter, section 33, and southwest quarter of southwest quarter, section 34, township 50, range 33; that they have employed S. P. Forsee to look after, sue for and recover their interest in said property, and to take possession of said property, and authorized said attorney in fact to unconditionally sell or dispose of their said interest, and they empower and authorize said attorney in fact to demand, sue for and recover said property, and any demands or suit said attorney in fact makes or commences, they ratify; that the same power is given to said attorney in fact as they possess by virtue of their ownership in the property.

The plaintiff also, offered in evidence a deed executed by James J. Priddy and Nancy A. Priddy, his wife, to Lot Coffman, dated on the ninth day of October, 1852, filed for record March 18, 1854, and recorded in the recorder's office of Jackson county, Missouri, in book V, page 324, which said deed is in the words and figures as follows, to-wit:

"James J. Priddy and Nancy A. Priddy, his wife, to Lot . Coffman—warranty deed, dated Oct. 9, 1852, filed March 18, 1854. Consideration $150.

"Grant, bargain and sell unto the said party of the second part the following land in Jackson county, Missouri, to-wit:

"The undivided one-ninth part of the southeast quarter of section 33, township 50, range 33, except 40 acres sold off the west side by order of the court, and the southwest quarter of

the southwest quarter of section 34, except the widow's dower already assigned to her in the same township and range 33.

"Witness our hands and seals.

"J. J. PRIDDY,  (Seal.)
"NANCY ANN PRIDDY.  (Seal.)

Acknowledged October 9, 1852, before a justice of the peace of Jackson county, Missouri, who certifies that "James J. Priddy and Nancy Priddy, his wife, who are personally known to him to be the same persons whose names are subscribed to the foregoing deed as parties thereto, appeared before him, and the said James J. Priddy acknowledged the same, and the said Nancy Priddy having been made acquainted with the contents of said deed, on examination apart from her husband, acknowledged that she executed the said deed and relinquished her dower in the said land freely and without compulsion or undue influence of her said husband."

And said deed mentioned in above agreed statement of facts, executed on the fifth day of May, 1853, by Nancy A. Priddy, James J. Priddy and Elizabeth Jones, heirs of Thomas Jones, deceased, of Jackson county, Missouri, to Lot Coffman, in the county and State aforesaid and recorded in book U, at page 133, on the twenty-seventh day of May, 1853, was offered and read in evidence; which said deed is in words and figures as follows, to-wit:

"Know all men by these presents, that we, James J. Priddy and Nancy A. Priddy, his wife, and Elizabeth F. Jones, being two of the legal heirs of Thomas Jones, deceased, of Jackson county and State of Missouri, for and in consideration of the sum of $50 to us in hand paid by Lot Coffman, of the county and State aforesaid, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and do hereby grant, bargain and sell unto the said Lot Coffman, his heirs and assigns, the two undivided ninth parts of our mother,

Martha Jones's dower in all the lands belonging to said estate in Jackson county and State of Missouri. Her dower contains thirty acres off the east side of the southeast quarter of the southeast quarter of section 33, township 50, range 33, and about twenty-two acres off the west side of the southwest quarter of the southwest quarter of section 34, same township and range, containing in all about fifty-two acres, as will more fully appear by reference to the report of the commissioners in assigning Mrs. Martha Jones her dower.

"To have and to hold the two undivided ninth parts of the above-described real estate after the death of our mother, Martha Jones, with all the privileges and appurtenances thereto belonging unto him, the said Lot Coffman, his heirs and assigns, in fee simple absolute forever; and we, the said James J. Priddy and Nancy A. Priddy and Elizabeth F. Jones, for ourselves, our heirs and our administrators, hereby covenant and agree with the said Lot Coffman, his heirs and assigns, that we will warrant and forever defend the title to the two undivided ninth parts of the foregoing described real estate against the legal claim or claims of all persons whomsoever.

"In testimony whereof, we have hereunto set our hands and seals, this the fourth day of May A. D., 1853.

"JAMES J. PRIDDY.　　(Seal.)<br>
"NANCY A. PRIDDY.　　(Seal.)<br>
"ELIZABETH F. JONES.　(Seal.)

"State of Missouri, County of Jackson:

"Be it remembered, that James J. Priddy and Nancy A. Priddy, his wife, and Elizabeth F. Jones, all of whom are personally known to the undersigned mayor of the City of Kansas, to be the same persons whose names are subscribed to the foregoing deed, this day personally appeared before me, in the City of Kansas, in said county of Jackson, and the said James J. Priddy and Elizabeth F. Jones, then and there acknowledged that they executed the said deed for the uses

and purposes therein expressed, and the said Nancy A. Priddy having been by me made acquainted with the contents of said deed, and on examination apart from her husband, acknowledged that she executed the said deed and relinquished all her rights, title and interest and dower of the real estate therein mentioned freely without compulsion or undue influence of her said husband.

"In witness whereof, I have hereunto set my hand and affixed my seal of office this fifth day of May, A. D., 1853.

"W. L. GREGORY, Mayor of the City of Kansas."

The foregoing deed and acknowledgment from James J. Priddy and others to Lot Coffman, were duly recorded on the twenty-seventh day of May A. D., 1853.

The plaintiff next read in evidence the petition filed in the circuit court of Jackson county, Missouri, in partition of the land mentioned in the deed last above read describing the same land, by James W. Jones, against Martha Jones, the widow, and the other children of Thomas Jones, deceased, for the purpose of having the widow's dower admeasured and set off, and partition of the land. In the petition it was alleged that Nancy A. Priddy and Elizabeth Jones were minors and a guardian *ad litem* was appointed for them.

Judgment of her portion of the land was thereafter made among the parties, in accordance with the prayer of the petition, and the widow's dower assigned as before stated and the balance of the land ordered sold.

The trial resulted in a judgment for defendant, from which plaintiff prosecutes this appeal.

The facts may be summarized as follows:

In the year 1843, Thomas Jones died seized of 200 acres of land described in the agreed statement of facts, leaving a widow, Martha Jones, and nine children surviving him, many of whom were minors, among them Nancy Priddy, a married woman, and Elizabeth Jones, both infants. In 1852, Nancy

Priddy, then a minor, and her husband, executed a deed to Lot Coffman (which was acknowledged before a justice of the peace) purporting to convey Mrs. Priddy's one-ninth interest in the entire Jones land, 200 acres, except 40 acres sold prior thereto. In 1852, James W. Jones, as plaintiff, filed a suit in partition against Martha Jones and her other eight children. In the petition it is alleged that Nancy Priddy and Elizabeth Jones are minors, and a guardian *ad litem* was appointed for them. May 5, 1853, Nancy Priddy and Elizabeth Jones, being then both minors, the latter only seventeen years old, executed a deed to Lot Coffman, which recited that they conveyed to said Coffman a "two-ninths undivided interest in our mother Martha Jones's dower in all the land belonging to said (Jones) estate." This deed was acknowledged before, and certified to by, the mayor of Kansas City, Missouri. In 1854, when Elizabeth Jones was only eighteen years old, she married William Linville in California. She and Mr. and Mrs. Priddy moved to California in May, 1853. Mr. and Mrs. Priddy lived together in lawful wedlock from 1849 to 1892, at which time she died. Priddy died in 1896. Mr. and Mrs. Linville were husband and wife from July, 1854, to 1892, at which time she died. He is still living. There was a son born to Mr. and Mrs. Priddy in 1852 and died in 1854. Other children now living survive her. Mr. and Mrs. Linville's first child was born in the year 1856. G. W. Priddy, a son of Mr. and Mrs. Priddy, prior to the filing of this suit conveyed by warranty deed to the plaintiff his interest in the land in controversy. The ouster was admitted as laid, and all the facts were agreed upon except the ages of the parties to the deeds in question.

It is said that as the deed from Priddy and wife to Coffman, dated October 9, 1852, was acknowledged before a justice of the peace, it did not convey the wife's fee simple lands inherited from her father's estate.

The statute in regard to conveyance at the time the ac-

knowledgment to this deed was taken (Revised Statutes of Missouri of 1845, p. 225, secs. 35, 37, 38 and 39), did not confer upon justices of the peace the right to take the acknowledgment of a married woman to a deed conveying her real estate, but such a conveyance was required to be executed by herself and husband, and acknowledged by them and certified by some court having a seal, or some judge, justice or clerk thereof, and, as justices of the peace had no seal, they were without authority to take an acknowledgment to and certify such a deed.   [Frost v. Pryor, 7 Mo. 314.]   Hence, the deed under consideration did not pass the title of Mrs. Priddy to the land therein described to the grantee Coffman, but was sufficient to convey the husband's life estate which he held as tenant by the curtesy. [Beal v. Harmon, 38 Mo. 435.]

It is also said that the deed from Priddy and wife, and Elizabeth Jones to Lot Coffman, dated May 4, 1853, and acknowledged before W. L. Gregory, mayor of the City of Kansas, did not pass the title of Mrs. Priddy to the land therein described, because of the want of authority in Gregory to take and certify to the acknowledgment.

By the provisions of section 1, article 1, of an act of the General Assembly of this State, entitled, "An act to incorporate the city of St. Joseph" approved, February 22, 1851, it was provided that the mayor of said city might have a common seal, and by section 6 of article 3 of the same act it was provided that he, the mayor of said City "shall be authorized to administer oaths, take depositions and acknowledgment of deeds, mortgages, and all other instruments of writing, affecting the title to lands, and certify the same under the seal of the city, which shall be received  as good and valid throughout the State of Missouri."   And section 1 of article 2 of an act entitled "An Act to incorporate the City of Kansas," approved, February 22, 1853, was made applicable to the City of Kansas, the provision of the act making it so providing that "An act to incorporate the City of St. Joseph, approved, February 22,

1851, shall be applicable to, and shall be in full force and effect in the City of Kansas."

It is however claimed that these acts merely conferred upon the mayor, *within* the city, such powers concerning acknowledgments as justices of the peace had in their several jurisdictions. We are unable to concur in this position, and for the following reasons:

The provision of the section quoted from the Act of February 22, 1851, with respect to the power of the mayor to administer oaths, take the acknowledgment of deeds, etc., is disconnected entirely from that provision of the section defining his powers and duties as justice of the peace; besides, he took the acknowledgment to the deed in question as such mayor, and not as justice of the peace. When the law says that he shall be authorized to administer oaths, etc., it means and has reference to the mayor, who as such was expressly authorized to take acknowledgment of deeds and to certify thereto under the seal of the city. Nor were his acts in regard to such matters restricted to the city by the act, in the absence of which his authority to take such acknowledgments was co-extensive with the county as the acts of officers having seals generally are. It would be a narrow construction to rule otherwise.

We do not think there is any merit in the contention that the deed is void because the officer who took the acknowledgment did not certify that Mrs. Priddy executed the deed "as a party thereto." The certificate complied in every essential with the requirements of the statute and was all that could be desired.

Another contention is that the deed to Coffman of 1853, even if properly executed, could only operate as a conveyance of the interests of the grantors in the dower or life estate of Mrs. Martha Jones.

It is true, that the deed in the granting clause says, "unto the said Lot Coffman, his heirs and assigns the two undivided ninth parts of our mother Martha Jones's dower in all the land

belonging to said estate in Jackson county and State of Missouri," but a deed like all other contracts is to be construed in accordance with the intent of the parties thereto, when such intent can be obtained from the instrument itself, and in arriving at such intention, all parts of the deed are to be taken into consideration, and if its language will admit of two constructions the one less favorable to the grantor is to be adopted. [2 Devlin on Deeds, (2 Ed.), sec. 848.] But such construction should, if possible, be adopted as will render all parts of the deed operative. With these fundamental principles in view, the question is, was the deed if it be construed according to plaintiff's contention, operative? We answer that it was not, because the grantors in the deed had no interest whatever in the dower interest of Mrs. Jones in the land. But when the deed is construed so as to convey the fee to two-ninths interest in the land subject to the dower interest of Mrs. Jones, of which Mrs. Priddy and Elizabeth F. Jones were the owners, then it was operative and unquestionably passed their interest in the land to the grantee, which was clearly the intention of the parties to the deed. This position finds support in the rule that when the construction of a deed is doubtful it is to be given that construction which is less favorable to the grantor. But if there be a doubt as to the intention of the parties to the deed, the habendum clause which performs the office of defining, qualifying or controlling the granting clause when not in conflict with it, is an important factor in arriving at such intent [1 Devlin on Deeds (2 Ed.), sec. 215], and that says in so many words, "to have and to hold the two undivided ninth parts of the above-described real estate after the death of our mother, Martha Jones, with all the privileges and appurtenances thereto belonging unto him, the said Lot Coffman, his heirs and assigns forever in fee simple absolute forever." It will not do to say that the grantors undertook to convey a fee simple title in a life estate, a dower interest merely, in

which they had no right, title or estate, nor do we think they so intended.

As both Mrs. Priddy and Mrs. Linville were minors, and the former a married woman at the time of the execution of the deed to Coffman in 1853, under which defendant claims title, and before Elizabeth Jones arrived at her majority she inter-married with one William Linville, and they both remained under the disability of coverture until their respective deaths in 1892, their husbands surviving them, and, in so far as the record discloses, they never at any time or in any way ratified or confirmed said deed, the heirs of each of them were entitled to· ten years under our statute of limitations after their respective deaths in which to disaffirm said deed, and, this, too, without regard to the length of time which elapsed from the time of the execution of the deed to the time of their decease. [16 Am. and Eng. Ency. of Law (2 Ed.), 299; Sims v. Ever-hardt, 102 U. S. 300.] And with respect to Mrs. Priddy, as she was a minor at the ·time of the execution of the deed and of her marriage, she was laboring under the disabilty of both infancy and coverture, and was not obliged to take any action to disaffirm the deed until the last disability was removed. [Wilson v. Branch, 77 Va. 65.]

Mere silence, however long, or omission to act, is not an affirmance.    [Youse v. Norcum, 12 Mo. 549; Huth v. Caron-delet, 56 Mo. 210.]

Upon the death of Mrs. Priddy, the right to disaffirm the deed did not die with her, but upon her death descended to her heirs (Harris v. Ross, 86 Mo. 89), and, plaintiff having ac-quired the interest of one of them before the institution of this suit, she was entitled to judgment therefor.

For the reasons above stated the judgment of the circuit court is reversed and the cause remanded.    All concur.