JAMES W. GROOMS v. JOHN MORRISON, Appellant.

Division Two, April 8, 1913.

1. **ESTOPPEL: Not Pleaded: Dower Assigned: Right to Homestead.** Estoppel must be pleaded to be available. Whether or not a widow whose husband died in 1874 was estopped, by an *ex parte* suit in partition in which she joined with his children and wherein the land in controversy was set off to her as her dower, to claim said land as a homestead, or whether or not her grantee is now thereby estopped, cannot be decided where the suit is in ejectment, and the petition contains no allegations except those necessary in an ordinary legal action, and the answer is a general denial and a plea of limitations; for such pleadings raise no equitable issue.

2. ————: **Raised by Son of Homesteader.** But a son of the homesteader, who claims an interest in the land only as an heir, and has expended no money in acquiring an interest in the property, is in no position to assert that the widow, who joined with the children, after her husband's death in 1874, in an *ex parte* suit in partition and which resulted in the land being set off to her as her dower, was thereby estopped to claim she owned the land absolutely under the then statute as to homesteads, or that her grantee was in consequence estopped by that proceeding.

3. **CONVEYANCE: Dower or Entire Estate.** Under the statute of 1865 concerning homestead, Mrs. Grooms, whose husband died in 1874, leaving six children by a former wife, was entitled to the forty acres in suit absolutely, it being a homestead and then not worth more than $1500. She joined with his children in an *ex parte* partition, in which this land was set off to her as her dower, and other lands of deceased were set off to the children. Thereafter the residence on the land burned, and she collected the insurance, and then in 1882, for a recited consideration of $400, she conveyed it by quit-claim deed, describing it as "the southeast quarter," etc., "it being the dower interest in the land belonging to the Grooms estate," the *habendum* clause expressly stating an intention to convey all the title she possessed. *Held*, that the words "it being the dower interest in the land belonging to the Grooms estate" identify the land intended to be conveyed, and are not meant to designate the grantor's interest in the land; and the deed conveyed the title absolutely, and not simply a life estate.

4. ————: **Use of Word Dower to Identify Land.** As the land was described by apt numbers immediately before the words

"it being the dower interest in the land belonging to the Grooms estate," it is more likely it was the intention of the parties by the use of those words to point out and describe the particular land intended to be conveyed than to state the nature of the title the grantor intended to pass. Such a recital as a method of further identifying the land conveyed is not unusual.

5. ————: **Habendum.** Where the nature of the title intended to be conveyed is, by the granting clause or the description of the property, rendered doubtful, the *habendum* clause of the deed may be considered in arriving at the intention of the parties. In this case the *habendum* clause expressly states an intention to convey all the title Mrs. Grooms possessed, and that is not without significance in understanding what she meant in the words of the description "it being the dower interest in the land belonging to the Grooms estate," since under the statute she was the absolute owner of the land and it is unusual to convey land to be held only during the life of the grantor.

6. ————: **Doubt Resolved Against Grantor.** Where a doubt exists as to the estate the parties intended the deed to convey, that doubt will be resolved against the grantor and in favor of the grantee.

7. ————: **Presumption: Subsequent Purchase from Heirs.** Twelve years after the widow had conveyed the land by a quit-claim deed, reciting a consideration of $400, and describing it as "the southeast quarter," etc., "it being the dower interest in the land belonging to the Grooms estate," the grantee, for $600, obtained from five of her husband's children a deed which conveyed an "undivided five-sixths interest" in the land. *Held*, that that act of the grantee did not raise a presumption that he knew when he obtained the widow's deed that he was purchasing only her life estate, and not the absolute title which she owned. What a man knows at a given time is no evidence of what he knew twelve years previously. Presumptions run forward, not backward.

8. ————: ————: **Quit-Claim Deed.** A quit-claim deed does not raise a presumption that the grantor intended to convey only a part of her title, because such a deed is just as effectual to pass the whole title as is a warranty.

Appeal from Clinton Circuit Court.—*Hon. John G. Park*, Special Judge.

Reversed.

*E. C. Hall* for appellant.

(1)   A deed will be construed to convey whatever interest or estate the grantor may have in the land at the time of its execution, unless the deed shows the grantor's intention was to pass a less estate or interest.   Bray v. Conrad, 101 Mo. 331; 2 Devlin on Deeds. 849.   A quit-claim deed simply employing the words "remise, release and forever quit-claim" contains sufficient operative words of conveyance to carry whatever interest the grantor has.   Wilson v. Albert, 98 Mo. 537; Ins. Co. v. Landis, 50 Mo. App. 116.   (2) The nature and quantity conveyed by the deed must be determined by the deed itself.   Rutherford v. Tracy, 48 Mo. 325; Thomson v. Thomson, 115 Mo. 56; Johnson v. Johnson, 170 Mo. 34; Brown v. Gibson, 82 Mo. 329. And where the terms of the deed are doubtful the benefit of the doubt should be given to the grantee and the deed construed most strongly against the grantor.   Linville v. Greer, 165 Mo. 380; Bray v. Conrad, 101 Mo. 331; Jennings v. Brizadine, 44 Mo. 332; Cochran v. Railroad, 94 Mo. App. 469.   (3)   The plaintiff contends that the deed to defendant only conveys a life estate, because after the description this language appears: "It being the dower interest in the land belonging to the Grooms estate."   The word "it" evidently refers to the description for its antecedent and that sentence is only descriptive and shows that this is the same land that was set off as the dower in the Grooms estate.   If taken literally, there was no land belonging to the Grooms estate and the statement would not be true.   If the widow had intended to convey only the dower and reserve the homestead the conveyancer would have used apt words to indicate what was not intended to be conveyed; otherwise the deed would convey all the interest of grantor.   Rines v. Mansfield, 96 Mo. 399; Davidson v. Mansen, 146 Mo. 618; Teideman on Real Prop., sec. 844.   (4)   If there

is any doubt as to the meaning of the deed as to the estate conveyed, the *habendum* may be used as an aid to determine the question. Linville v. Greer, 165 Mo. 380. (5) The deed from Mrs. Martin to defendant was made more than twenty years prior to grantor's death and during all that time defendant held possession with his deed on record. No steps were ever taken by grantor to reform the deed. The circuit court held that the deed conveyed a life estate only. The evidence showed that Mrs. Martin, the grantor, had a fee simple title by virtue of having been widow of William Grooms and having a homestead in this land which was set off to her in the partition proceeding as dower and homestead. It is true that she had a freehold estate in the land which was comprised in her fee simple title, but she had no life estate separated from such absolute title upon which a conveyance, without restrictions, could operate to convey; consequently when she makes the deed without restrictions as to the interest conveyed she must be held to have conveyed all the title she had in the premises described. Bray v. Conrad, 101 Mo. 337; 2 Devlin on Deeds, 849; Tygard v. Hartwell, 204 Mo. 205

*W. S. Herndon* for respondent.

(1) The deed from Mrs. Martin and husband to the appellant, and upon which he relies, only conveyed a life estate, that is, her dower interest. Bruensman v. Carroll, 52 Mo. 313. (2) The deed itself shows that the intention of the parties was only to convey a life estate. The consideration, $400, shows this. The purchase by appellant of five-sixths interest from Thomas J. Grooms and paying $600 therefor twelve years later shows that he so understood the deed. "The object of a description in a deed is to define what the parties intended, the one to convey, the other to

receive, by such deed, and the intention of the parties is to be deduced from the instrument of conveyance, as in the case of any other contract." Long v. Waggoner, 47 Mo. 178; Bruensman v. Carroll, 52 Mo. 313; Davis v. Hess, 103 Mo. 31; Wallace v. Dumtra, 152 Mo. 489; Linville v. Greer, 162 Mo. 380. (3) Language in a deed, not technical, must be taken in its ordinary and usual sense. "It being the dower interest in the lands belonging to the Grooms estate" could only mean the life estate of Martha A. Martin. Bradbury v. Bradbury, 64 Mo. 384. (4) The construction which the parties gave the deed at the time it was executed is binding. The appellant construed the deed and treated it as conveying only a life estate. Wolf v. Dyer, 95 Mo. 595; Carter v. Foster, 145 Mo. 383. (5) The cardinal rule of interpretation of a deed is the true intent and purpose of the maker, as that intent may be discerned from the instrument itself taking it all together, considering every part of it in the light of the circumstances surrounding the maker at the time of its execution. Aldridge v. Aldridge, 202 Mo. 572. The intention of the parties should be gathered from the words used, "It being the dower interest in the land belonging to the Grooms estate," which shows conclusively that only the dower interest was conveyed. Tygard v. Hartwell, 204 Mo. 200.

BROWN, P. J.—Ejectment for forty acres of land in Clinton county. Plaintiff recovered an undivided interest in the property sued for and defendant appeals.

William Grooms is the common source of title. He died intestate in May, 1874, leaving a widow; also six children by a former marriage. Plaintiff is one of those children. At the time of his death William Grooms occupied the land as a homestead, and it is established by a preponderance of evidence that said property was not then worth more than $1500.

The widow of said William Grooms married a man named Martin, and at a date not shown by the record joined the children of her first husband (Grooms) in an *ex parte* partition suit. In that suit the land in controversy was set off to Mrs. Martin as her dower. Other lands of deceased were set off to the heirs.

The residence upon the homestead was burned after the partition suit, and Mrs. Martin collected the fire insurance thereon.

In 1882 defendant procured from Mrs. Martin and her husband a quit-claim deed for the property in dispute, which deed recites that in consideration of the sum of four hundred dollars grantors remise, release and forever quit-claim to defendant:

"The southeast quarter of the northeast quarter of section 26, in township 55, of range 33, containing forty acres, more or less, *it being the dower interest in the land belonging to the Grooms estate.*

"To have and to hold the same, with all rights, immunities, privileges and appurtenances thereto belonging unto the said party of the second part, and his heirs and assigns forever, so that neither the said parties of the first part, nor their heirs, nor any person or persons for them or in their names or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they, and every of them, shall by these presents be excluded and forever barred."

In 1894 defendant, for an expressed consideration of $600, purchased from the sister and four brothers of plaintiff what is described in the warranty deeds made by them as an undivided five-sixths interest of the land in dispute.

Martha A. Martin died in 1903.

Such other parts of the evidence and pleadings as are necessary to a full understanding of the case will be noted in our opinion.

## OPINION.

I.  Respondent contends (1) that by accepting the land when it was assigned to her as a dower in the *ex parte* partition suit, Mrs. Martin was estopped from asserting any other or greater title to the property, and that defendant as her grantee is likewise estopped; (2)  that even if the acceptance of the property as dower was not a waiver of her right to claim the whole title to same under the homestead law, the quit-claim deed executed by her and her husband only conveyed her life estate, and that upon her death the plaintiff became entitled to an undivided interest therein as an heir.

The contention of plaintiff that by accepting the forty acres of land in controversy as dower Mrs. Martin was (and the defendant claiming through her is) estopped from asserting that she acquired the whole title to said property as a homestead, cannot be sustained for the reason that said estoppel is not pleaded.  The petition of plaintiff contains no allegations except those necessary in an ordinary legal action of ejectment and the answer is merely a general denial and a plea of the ten-year Statute of Limitation. Consequently there are no equitable features in the case.

**Estoppel.**

A Texas judge recently announced the doctrine that the Statute of Limitation when not pleaded, like the prayer of the wicked, "availeth nothing."  The same doctrine with a few exceptions applies to estoppels in Missouri, as many decisions of this court bear witness.  [Golden v. Tyer, 180 Mo. 196; Brown Const. Co. v. MacArthur Bros. Co., 236 Mo. 41, l. c. 50; Keeney v. McVoy, 206 Mo. 42, l. c. 59; Turner v. Edmonston, 210 Mo. l. c. 428.]  The trial court is entitled to know what issues are involved in a case before he hears the evidence.

It seems plausible that a widow by representing

that she holds only a dower in the lands of her husband and thereby causing other parties to expend their money in buying such lands from the heirs should be estopped from afterwards asserting that she owned the fee; but it is difficult to see how plaintiff could bring himself into that class. His claim is not based upon a purchase, nor has he expended any money in acquiring his claim to the property. He asserts title only as an heir, and nothing that Mrs. Martin did has caused him to change his position to his injury.

II.  The homestead law of 1865 was in force in 1874 when William Grooms died. Consequently, under the facts in this case, his widow became the owner in fee of the property in controversy. [Skouten v. Wood, 57 Mo. 380; Register v. Hensley, 70 Mo. 189, 1. c. 194.]

**Homestead Law of 1865.**

III.  The quit-claim deed from Mrs. Martin and her husband to defendant correctly describes the land in controversy and the only language it contains which casts any doubt upon the intent of the grantors to convey a fee simple title is the clause which immediately follows the description of the land, to-wit: "It being the dower interest in the land belonging to the Grooms estate."

**Construction of Deed.**

Respondent earnestly insists that the pronoun "it" in the above quoted clause refers to the title intended to be conveyed and not to the description of the land. He cites: Bruensmann v. Carroll, 52 Mo. 313; Long v. Wagoner, 47 Mo. 178; Davis v. Hess, 103 Mo. 31; Walton v. Drumtra, 152 Mo. 489; Linville v. Greer, 165 Mo. 380; Bradshaw v. Bradbury, 64 Mo. 334; Wolfe v. Dyer, 95 Mo. 545; Carter v. Foster, 145 Mo. 383; Aldridge v. Aldridge, 202 Mo. 565, 1. c. 572; and Tygard v. Hartwell, 204 Mo. 200.

We have diligently examined all the cases cited; some of them contain language which tends to support plaintiff's position, but none of them present a state

of facts similar to those upon which we are now called upon to pass judgment. One of these cases (Linville v. Greer, 165 Mo. 380) supports the contention of defendant more strongly than the views of the plaintiff. We deem it unnecessary to burden this opinion with a recital of what those cases hold.

When this deed was executed the homestead law of 1865 had been in force seventeen years, and the opinion of this court in Skouten v. Wood, 57 Mo. 380, holding that the aforesaid homestead law vested in the widow a fee simple title, had been published about eight years; so that Mrs. Martin had a fair opportunity to understand the nature and extent of her title before making the deed.

The making of the quit-claim deed did not of itself raise a presumption that Mrs. Martin intended to convey only a part of her title, because a quit-claim deed is just as effectual to pass the whole title as a warranty deed. [Wilson v. Albert, 89 Mo. 537; Chew v. Kellar, 171 Mo. 215.]

When there is no other more certain method of arriving at the intention of parties to an instrument, or of ascertaining the true meaning of a legislative enactment, a qualifying word or phrase used in such instrument or enactment is generally held to apply to the last antecedent.

In the deed now under consideration the words: "It being the dower interest in the land belonging to the Grooms estate" can be construed to apply either to the amount or nature of the title intended to be conveyed, or they can apply to the physical description of the land, which they follow; and as the land was described next before that clause, it is much more probable that it was the intention of the parties by the use of those words to point out and describe the particular land intended to be transferred, rather than the nature of the title which the grantor intended to pass. This doctrine finds support in Stroud's Judicial Dic-

tionary (2 Ed.), vol. 1, p. 52; 2 Lewis's Sutherland's Statutory Construction (2 Ed.), p. 811, sec. 420. This rule, like many others, is not without its exceptions, but in its general application it accords with the every day experience of mankind. It is true that as the grantor (Mrs. Martin) had been described in the partition suit as holding a dower, there arises a slight presumption that she only intended to assert title to and sell her dower or life estate. However, this presumption in favor of plaintiff is, to a large extent, overcome by the fact that she collected all the fire insurance on the house just as though she owned the title in fee to the land where the house had stood, and by the further fact that scriveners very frequently insert in deeds a reference to some legal document, plat or decree of court containing a description of the property as a method of further identifying the land intended to be conveyed; so that the language immediately following the description in Mrs. Martin's deed was not an unusual recital, nor does the presence of an explanatory recital in the deed at that place raise a presumption of an intent to limit the estate unless the phraseology of the explanatory recital will reasonably bear such construction.

The recited consideration of $400 paid to Mrs. Martin for this deed does not cast any light upon the intent of the parties. There is no direct evidence tending to prove what the forty acres were worth after the dwelling house thereon was burned. It is described by the witnesses as "grazing land;" so it is quite probable that the house constituted the principal value of the forty acres, and that it was not worth more than $400 in 1882 when defendant purchased it of Mrs. Martin.

It is urged that the act of defendant in giving $600 for the deed, purporting to convey a five-sixths interest in the property from plaintiff's sister and brothers, raises a presumption that defendant knew in

the year 1882 that he was only purchasing the life estate of Mrs. Martin. That argument is entirely unsound. What a man knows or believes at a given time is no evidence of what he knew or believed twelve years before that date. Presumptions run forward, and ordinarily do not move backwards like a crawfish.

When the nature of the title intended to be conveyed is, by the granting clause or the description of the property, rendered doubtful, the *habendum* clause of the deed may be considered in arriving at the intent of the parties. [Rines v. Mansfield, 96 Mo. 394, l. c. 399; Linville v. Greer, 165 Mo. 380, l. c. 397; Utter v. Sidman, 170 Mo. 284, l. c. 292.] The *habendum* in this deed expressly states an intention to convey all the title Mrs. Martin possessed.

It is a common occurrence for parties who hold the entire title to real estate to convey a limited estate therein to terminate on the death of the grantee in the deed; but it is quite unusual to convey property to be held only during the life of the grantor. And from the standpoint of custom it is much more likely that Mrs. Martin would sell her whole title than only a part thereof.

Viewed from every conceivable standpoint presented by the record there lingers some doubt as to the intent of the parties to the deed, but it is a well-recognized rule that when such doubt exists it shall be resolved against the grantor in the deed and in favor of the grantee. [Linville v. Greer, 165 Mo. 380.]

After full consideration of the deed and the circumstances preceding and following its execution we find that the clause following immediately the description of the land should be construed to read as follows: It being the same land set off as dower in the Grooms estate. Entertaining these views we will reverse the judgment and direct the trial court to enter judgment for the defendant. It is so ordered.

*Walker* and *Faris, JJ.,* concur.