## MINNIE T. BOLIN, Appellant, v. TYROL INVESTMENT COMPANY.

### In Banc, February 2, 1918.

1. **CONVEYANCES: Restrictive Covenants: Consistent Incumbrances.** Restrictive covenants contained in conveyances are in the nature of easements reserved by the grantor in the lands conveyed, appurtenant to his other lands. They are easements running with the land, and as such are incumbrances consistent with the passing of the fee by the conveyance in which they are reserved. ·

2. ———: ———: **Must Be Clearly Expressed.** Restrictive covenants, being in derogation of the fee conveyed by the deed, are not to be extended by implication to include anything not clearly expressed in them. If reasonable and substantial doubt is raised by the words employed in the restrictive covenant, it must be resolved against the grantor. To be operative the restriction must be plainly written in the grant.

3. ———: ———: **Apartment House: Six Dwellings.** Where the restrictive covenant forbade the grantee or any one claiming by, through or under him to construct or allow to be constructed "any dwelling house less than two stories in height" or "more than one such dwelling on each fifty-feet front of said lot," it did not prohibit the construction of an "apartment house" three stories high, with a single entrance in the middle of the front elevation, opening into a common hall, from which access is had

273 Mo.—17

to each suite or apartment, of which there are three on each side, there being no porches or other structures on the outside indicating the different apartments, and the lot having a frontage of two hundred feet. Said "apartment house" is not six dwelling houses, but comes within the definition of a "house," which is, "a structure fixed in place and intended for the private occupation of a family or families;" and being one house, and the words "apartment" or "apartment house" not being found in the restrictive covenant, the construction of the said "apartment house" cannot be enjoined.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*A. M. Frumberg* and *A. R. Russell* for appellant.

(1) The erection of an apartment, consisting of six separate family dwellings, is violative of a restriction that not more than one dwelling shall be erected on a specified tract. Sanders v. Dixon, 114 Mo. App. 239; Thompson v. Langan, 154 S. W. 808. (2) An apartment house is a number of dwellings, and the erection of such a building is a violation of a restriction against the erection of more than one dwelling. Sanders v. Dixon, 114 Mo. App. 229; Thompson v. Langan, 172 Mo. App. 64; Bolin v. Tyrol Investment Co., 178 Mo. App. 1; Schadt v. Brill, 173 Mich. 647; Harris v. Roraback, 137 Mich. 292; Rodgers v. Hosegood, 2 Ch. 388; Kingston v. Busch, 142 N. W. 754; Bagnall v. Young, 151 Mich. 69.

*Ephrim Caplan* and *Rassieur, Kammerer & Rassieur* for respondent.

(1) Restrictive covenants being in derogation of the right to the unrestricted use of property are to be construed strictly against the parties seeking to enforce them, and they will not be extended by implication to include anything not plainly prohibited. Zinn v. Sidler, 268 Mo. 689; Kitchen v. Hawley, 150 Mo. App. 503; Pank v. Eaton, 115 Mo. App. 176; Hartman v.

Wells, 257 Ill. 167.   Where the grantor enters into detail, specifying certain matters as prohibited, it is to be presumed, if nothing to the contrary appears, that buildings of a character not thus excluded are intended as a proper use of the property.   All doubts are to be resolved in favor of the free and untrammeled use of the property and against restrictions.     Underwood v. Herman, 82 N. J. Eq. 353; Kitchen v. Hawley, 150 Mo. App. 447, 503; Hutchinson v. Ulrich, 145 Ill. 336; Hunt v. Held, 90 Ohio St. 280; St. Andrew's Appeal, 67 Pa. 512.   (2)   Restrictions as to construction and restrictions as to user are different and distinct, and a restriction against a plural structure will not be construed to prohibit a plural use of a single structure unless such intention is clearly expressed. Hamnett v. Born, 247 Pa. 418; Arnoff v. Williams, 113 N. E. (Ohio) 661; Pank v. Eaton, 115 Mo. App. 176; Land Co. v. Inv. Co., 169 Mo. App. 723; Dutch Church v. Bldg. Co., 214 N. Y. 268.   (3)   Where the restriction has reference only to the construction of a permitted structure and the language employed describes the building which may be erected in terms which have a general significance and the restriction makes no reference to the use of the structure, then the terms employed will be given their usual and ordinary meaning.   Pank v. Eaton, 115 Mo. App. 176; Kitchen v. Hawley, 150 Mo. App. 503; Hamnett v. Born, 247 Pa. 418; Hutchinson v. Ulrich, 145 Ill. 336.   And a narrow and restricted meaning will not be given unless such intention is clearly expressed in the deed.   McMurty v. Phillips, 103 Ky. 308; Arnoff v. Williams, 113 N. E. (Ohio) 661; Fortesque v. Carroll, 76 N. J. Eq. 583.   (4)   The term "dwelling house" is a general term merely descriptive of a structure suitable for human habitation, irrespective of how it may be occupied, and one dwelling house may be so constructed as to contain separate apartments, each of which may constitute a dwelling, yet the whole be in fact but one structure.   Berry on Restrictions, sec. 95; Johnson v. Jones, 244 Pa. 389; Dutch Church v. Bldg. Co., 214 N. Y. 268.   An apartment house is a "dwell-

ing house'' and does not violate a restriction prohibiting the erection of more than one dwelling house on a single lot. Hamnett v. Born, 247 Pa. 418; Arnoff v. Williams, 113 N. E. (Ohio) 661; Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341; Holt v. Fleischman, 75 App. Div. 593, 78 N. Y. Supp. 647; Bates v. Logeling, 137 App. Div. 578, 122 N. Y. Supp. 251; Stone v. Pillsbury, 167 Mass. 332; Hutchinson v. Ulrich, 145 Ill. 336.

BROWN, C.—This suit was brought to the June term, 1910, of the circuit court for the city of St. Louis for the purpose of obtaining an injunction restraining the defendant from erecting an apartment house on Lot Fifteen in Block 3810 of Chamberlain Park, a subdivision of the city of St. Louis. The lot is on the southwest corner of Etzel and Belt avenues, on each of which is a frontage of about two hundred feet. The house which defendant proposed to build is a handsome structure to cost between $25,000 and $30,000. It is to be three stories in height, with a single entrance in the middle of the front elevation, opening into a common hall, from which access is had to each suite or apartment, of which there are three on each side, each occupying the entire floor on that side. There are no porches or other structures on the outside indicating the different apartments. In short, the words ''apartment house'' used in the petition properly described it.

One Chamberlain, being the owner of the land in 1887, laid out the subdivision by statutory plat. The Western Realty Company, having acquired it, conveyed Block 3810 to John Jackson by deed dated October 5, 1887, in which it was expressly provided that neither the said grantee, nor anyone claiming by, through or under him, prior to the 31st day of December:

''1. Shall construct or allow to be constructed in the premises above described any dwelling house less than two stories in height.

"2. Shall construct or allow to be constructed more than one such dwelling on each fifty-feet front of said lot.

"3. Shall construct or allow to be constructed thereon any dwelling to cost less than four thousand dollars in cash, nor locate or erect such dwelling nearer than thirty feet to the line of the street on which such dwelling fronts.

"4. Shall construct or allow to be constructed any stable, shed or outhouse nearer to any public driveway than one hundred feet.

"5. Shall construct or allow to be constructed or erected or to exist any nuisance or any livery stable or manufacturing establishment of any kind on said premises.

"6. Shall construct or allow to be constructed, used or occupied any grocery store, bar room or business place for the bargain and sale of any kind of merchandise on said premises.

"To have and to hold the premises hereby conveyed, subject to the exceptions, reservations, conditions and reversions aforesaid."

Both plaintiff and defendant claim by mesne conveyances through Jackson.

The sole question presented by the parties in this court is whether the erection of the building described would be a violation of any of the restrictive covenants of the deed.

**Restrictive Covenant.** Covenants of this character expressed in deeds of conveyance of lands are in the nature of easements reserved by the grantor in the lands conveyed, appurtenant to his other lands. [Improvement Co. v. Tower's Exr., 158 Mo. 282; King v. Trust Co., 226 Mo. 351.] In these cases we called it "an easement running with the land." It is, as such, an incumbrance consistent with the passing of the fee by the conveyance in which it is reserved. The curious will find this subject interestingly discussed, with reference to many authorities with which it is unnecessary to in-

cumber this record, in sections four and five of Berry's "Restrictions on the Use of Real Property." It is useless to waste words in demonstrating that such easements are usually reserved by the grantor in the hope that they will prove valuable to him in the disposition of his land. Being in derogation of the fee conveyed by the deed, such covenants will not be extended by implication to include anything not clearly expressed in them. [Zinn v. Sidler, 268 Mo. 680; Kitchen v. Hawley, 150 Mo. App. 497; Hutchinson v. Ulrich, 145 Ill. 336; Hartman v. Wells, 257 Ill. 167, 172; Hamnett v. Born, 247 Pa. St. 418; Johnson v. Jones, 244 Pa. St. 386.] The words "clearly expressed," as used by this and other courts, have no significance unless they mean that if a reasonable and substantial doubt is raised by the words employed in the covenant it must be resolved against the grantor. [Stone v. Pillsbury, 167 Mass. 332, and cases cited; Johnson v. Jones, supra; Grooms v. Morrison, 249 Mo. 544; Linville v. Greer, 165 Mo. 380.] It is only by such construction that such titles can be made certain, so that the use of lands conveyed in fee shall not depend upon the diverse opinions of judges as to the *minds* of the parties to the grant, but restrictions thereon shall appear plainly *written* in the grant.

This subdivision was platted in May, 1887. On October 5, 1887, the Western Realty Company had acquired it, and on that date conveyed Block 3810 to John Jackson, with the restrictions we have quoted. This was an important transaction, involving, according to the evidence, between two and three thousand feet of the frontage of the subdivision on Bartmer and Etzel avenues. These restrictions were evolved from the desire of the Realty Company to sell and of Jackson to buy. The Company was, so to speak, walking on the top rail of the fence which divided profit from loss—the hoped for advantage to his other lands from the restrictions he might impose, and the loss of the bargain he was making—with only his pen for a balance, and it behooved him to use it carefully to save

himself from falling on the wrong side. Mr. Jackson's interest did not lie with his, for restrictions would do him no good. He could create them by his own deeds should he so desire. The result was that the Realty Company, if it ever had the idea of making Block 3810 an exclusive residence district, as charged in the petition and argued at bar, abandoned it, and placed in the deed nothing which could, by any logical stretch of the imagination, be construed into such a restriction. On the contrary, he proceeded, in express terms, to enumerate other structures which he desired to exclude. These were livery stables, manufacturing establishments, grocery stores, bar rooms, and business places for the bargain and sale of merchandise. By the operation of the good old maxim *expressio unius est exclusio alterius* he excluded all other structures than those mentioned from the category of his restrictive easements. Purchasers under that deed might erect office buildings, hospitals, hotels, boarding houses, churches, homes for the aged and for abandoned infants, and many other structures intended to be used for purposes of business or charity not included in his list. Apartment houses are not referred to unless they come within the description "dwelling house." We gather from the instrument that all these matters were in the minds of the parties when the Jackson deed was made, and that the extent to which the new enterprise was to be incumbered with these restrictions was discussed and determined. The argument of the appellant in this case seems to be founded, to a great extent, upon the ideal which it is assumed the founder of Chamberlain Park and the Western Realty Company had in mind when he conceived the enterprise, and not upon the shattered fragments which survived this sale. With the first we have nothing to do. We are only concerned with the last.

The first restrictive clause in the deed refers to the construction of any "dwelling *house*" on the premises described less than two stories in height. With this clause we have nothing to do except to use the

word "house" therein contained in explanation of the meaning of the adjective "such" in the second clause, which shows that it refers to the word house as already used, so that the clause reads in effect "shall construct or allow to be constructed more than one such dwelling *house* on each fifty front of said lot." This is the clause upon which the appellant depends to maintain her suit. If it is not a dwelling house there is no restriction; if it is a dwelling house it is expressly permitted; only on the theory that it is six dwelling houses can she maintain her suit.

The building, according to the testimony, in handsome and expensive, each apartment of the six which it contains costing more than the $4000, specified as the minimum cost of an entire house. That it conforms to the building line established is admitted. The only contention upon which appellant rests her case is that each apartment in this house is a "house" within the meaning of the second clause of the restrictions. This implies the absurdity that one house, if it be an apartment house, is six houses, and does mortal violence to the dictionary definition of the word in which all the lexicographers of our language seem to agree, so that we will quote from the International, which is, we believe, authority. So far as it defines "house" as a structure it is as follows: "A structure intended or used for human habitation; esp., a human habitation which is fixed in place and is intended for the private occupation of a family or families." This definition is supported by many judicial authorities, some of which refer to the very question before us. Among the latter are the following: Reformed Church v. Building Co., 214 N. Y. 268; Hamnett v. Born, supra; Bates v. Logeling, 137 N. Y. App. Div. 578; Johnson v. Jones, supra; Arnoff v. Williams, 113 N. E. (Ohio) 661; Hutchinson v. Ulrich, supra; Stone v. Pillsbury, supra.

The appellant cites us to Sanders v. Dixon, 114 Mo. App. 229, and Thompson v. Langan, 172 Mo. App. 64, as sustaining her contention, as well as to this case, which is reported in 178 Mo. App. 1, and certified to

this court on the ground of conflict with the decisions of this court in Grooms v. Morrison, supra, and Linville v. Greer, supra. In the Sanders case the meaning of the word "house" was not involved, nor used in the covenants. So far as either of those cases conflict with the conclusion at which we have arrived, we do not follow them. Nor do we incline to the doctrine of the Michigan Supreme Court as expressed in the cases cited by appellant, beginning with and following Harris v. Roraback, 137 Mich. 292. We consider them, in their application to the deed before us, as clearly against the great weight of authority in other States, as expressed in cases we have already cited, in which precisely the same question now before us was in issue and decided. We will not refrain, however, from referring to the exact question decided in some of those cases. In Schadt v. Brill, 173 Mich. 647, the restriction prohibited the construction of a "store, factory or building, other than a dwelling house" upon the premises, and that the premises should be used for residence purposes only. The court held that a double house or flat was not a dwelling house within the meaning of the restriction. In that respect it is an authority directly in respondent's favor. If this building is not *six dwelling houses* it does not come within the restriction. In Bagnall v. Young, 151 Mich. 69, the condition in the deed was "that nothing but a two-story dwelling house, costing not less than twenty-five hundred dollars . . . shall be erected on said lots." The court held this restriction to be violated for reasons stated in Harris v. Roraback, supra, by the erection of a double two-story house. The covenant was held to mean that "no house except one planned and designed for a single dwelling should be erected." In all these cases the covenant or condition prohibited the construction on the land of any building other than a dwelling house, and the court held that a double house or flat did not come within that description. In the case before us all other structures except the few especially prohibited are clearly permissible.

In this comment we do not intend to express our approval of the doctrine announced by the Michigan court in these cases, but only to direct attention to the inapplicability of its reasoning to this case.

The judgment of the circuit court for the city of St. Louis is affirmed.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the Court in Banc. *Bond, Faris, Woodson* and *Williams, JJ.,* concur; *Graves, C. J., Walker* and *Blair, JJ.,* dissent.