## PANK, Appellant, v. EATON et al., Respondents.

### St. Louis Court of Appeals, November 14, 1905.

#### Opinion by Goode, J.

1. **BUILDING RESTRICTIONS: "More Than One House."** The erection of a flat, two stories in height, planned for two families, one on first and one on second floor, is "one house" within the meaning of a restrictive covenant in the owner's deed providing against the erection of "more than one house" on each lot (distinguishing Sanders v. Dixon, 114 Mo. App. 229).

#### Concurring Opinion by Bland, P. J.

2. ———: ———. In such a case where the restrictive covenant prohibits the conduct of certain kinds of business upon the premises and places a minimum limit of cost for a "dwelling" house, the context shows that a flat consisting of two stories designed for apartments for separate families in each story is not more than "one house" in the meaning of the covenant.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Hickman P. Rodgers* for appellants.

(1) Restrictions on the use of ground imposed pursuant to a general plan or scheme of improvement, are to be fairly and reasonably interpreted so as to accomplish their apparent purpose. 1 Jones on Real Property, sec. 735; Washburne's Easements and Servitudes (4 Ed.), p. 116, 117; Jeffries v. Jeffries, 117 Mass. 184-189; Tallmadge v. Bank, 26 N. Y. 105; Gilbert v. Peteler, 38

Barb. 488-514.   (2)   And it may be determined from the language of the deed that restrictions are for the benefit and improvement of property.   Hillis v. Mentzenroth, 173 Mass. 423.   (3)   The words "more than one house to be erected on each forty feet frontage" contained in the restrictions involved herein, are plain enough to speak for themselves and require no judicial construction.   (4)   But if necessary to plaintiff's case, the words "one house" in the absence of attending definition should be construed to mean a dwelling-house.   Schenck v. Campbell, 2 Abb. Prac. 292.   (5)   A structure which would contain two apartments or places of residence, each apartment having its front door, back door, windows, basement, furnace, hallway, drawing room, dining room, living rooms, bath room, closets and kitchen separate and apart from the other apartment and, though within the same outer walls and under the same roof, separated from each other by substantial perpendicular and horizontal partitions so that each would be a complete place of residence in itself, the front door of one being numbered 5728 (Bartmer avenue) and the other numbered 5730, having no internal communication between said respective apartments nor any part of either apartment in which the tenant of the other would have an interest in common, would be in fact, and in law or equity, two houses.   Ilford Park Estates v. Jacobs, 72 L. J. Chan. Div. 669; Thompson v. Warde, 6 Com. Pleas, 327; The King v. Inhabitants, etc., 5 Adol. & Ellis, 261; 31 E. C. L. 332; In re Hecquard, 24 Q. B. Div. 75; Chapman v. Royal Bank, etc., 7 Q. B. Div. 136; Yorkshire v. Clayton, 8 Q. B. Div. 424; Snow v. Whitehead, 53 L. J. Ch. 885; Tracey v. Talbott, 6 Mod. 214; Grant v. Langston, 69 L. J. (Privy Council) 66; Gillis v. Bailey, 21 N. Ham. 149; State v. Clark, 89 Mo. 423; Loring v. Bacon, 4 Mass. 575; Harris v. Roraback, 100 N. W. 391; Lloyd on Building and Buildings, p. 360.

*C. H. Kern* and *F. W. Imsiepen* for respondents.

(1)   The word "house" as used in the restrictive clause is and remains a generic term, and is synonymous with "structure" because the context of the clause, which permits a variety of uses, fails to provide a single adjective whereby all the permitted users could be designated as a means of giving said generic term "house" or "structure" a specific meaning.   Century Dictionary, p. 2901.   (2)   There is no restriction touching the minimum value of such structure except that no dwelling shall be erected costing less than $3,000.   Therefore with respect to the number and character of users, it follows, that the parties having expressed themselves clearly upon and having in terms enumerated the users which are prohibited, that those users which have been excluded from said prohibition, are rightfully reserved to the holder of the fee.   *Expressio unius est exclusio alterius.*   Hutchinson v. Ulrich, 145 Ill. 341; Kimber v. Adams, 69 L. J. C. 296; Coughlin v. Barker, 46 Mo. App. 65; Parker v. Nightingale, 6 Allen 347; Kitching v. Brown, 73 N. E. 241 and cases cited.   (3)   A restriction on the use of property being in derogation of common-law rights is construed most strictly against the covenant, and will not be extended by implication.   Stone v. Pillsbury, 167 Mass. 337; Clark v. James, 87 Hun 215; Ives v. Van Auken, 34 Barb. 567; Grafton v. Meyer, 130 N. Y. 465; Eckhardt v. Irons, 128 Ill. 568; Hamilton's Law of Covenants, pp. 20-21; Lloyd on Building and Buildings (2 Ed.), p. 230, sec. 148.

STATEMENT.—The petition in this case is in the nature of a bill in equity and the purpose is to enjoin the erection of a house on Bartmer avenue in the city of St. Louis on the ground that the house is prohibited by restrictive covenants.   Final judgment was entered against the plaintiffs on a demurrer to the petition.   The plaintiffs are the owners of other lots in the vicinity, claiming title under Mary C. Miller, the common source

of title to all the lots in the affected district. Mary Miller subdivided the tract of land into lots forty and fifty feet wide, and in the several conveyances executed by her, inserted restrictions regarding the sort of buildings that might be erected on the lots and the use of them for business purposes. We gather from the petition that the ground is known as Gamble's Second Subdivision of Rose Hill, and is in city block No. 3812. The lot owned by the defendant Edith S. Eaton has a width of forty feet on the south side of Bartmer avenue and a depth of one hundred and sixty feet. The restrictive covenants in her deed are these:

"The above conveyance is made by said grantors, and accepted by said grantee, subject to the following conditions, which shall continue in force until July 1, 1903, and said Edith S. Eaton, for herself, her heirs and assigns, is obligated to faithfully observe and perform these conditions: No dramshop, livery stable, blacksmith shop, stock yards, milk dairy or any manufacturing establishment whatever, or any business or proceeding prohibited by law shall be carried on on said premises, nor shall any dwelling-house costing less than three thousand dollars be erected upon said premises, nor shall any erection be made within thirty feet of the south line of Bartmer avenue, nor more than one house to be erected on each forty feet frontage."

It appears that the same covenants are contained in the deeds to the plaintiffs.

The infringement by the defendants is thus stated:

"Plaintiffs further say that though by the terms of said deed, defendant Eaton is forbidden to construct upon the ground by her so acquired more than one house, nevertheless, she and her agent, defendant Francis, wholly disregarding the rights of plaintiffs, and in violation and defiance of said restrictions, are now intending and threatening to build and construct and are at this time actually engaged in building and constructing, two houses upon her said forty-foot lot of ground; in this,

that defendants are now engaged in erecting upon said ground, a structure at a cost of about $6,500, which, if completed according to their intentions, will contain two apartments or places of residence, each apartment having its front door, back door, windows, basement, furnace, hallway, drawing room, dining room, living rooms, pantries, bath room, closets and kitchen separate and apart from the other apartment; that while the said two apartments will be within the same four outer walls and under the same roof, they will be separated from each other by substantial, perpendicular and horizontal partitions so that each will be a complete place of residence in itself, the front door of one being No. 5728 Bartmer avenue, and of the other 5730 Bartmer avenue; that there will be no internal communication between said respective apartments, nor any part of either apartment in which the tenant of the other would have an interest in common; and which said structure would, if completed, form what is commonly known as 'flats;' that though defendants had, when said property was acquired, actual and constructive notice of said restrictions, and were, at the inception of said work of construction, notified and warned by plaintiffs that the proposed building of said two houses was contrary to said restrictions and the intentions of said grantor, defendants are persisting in the construction of said building, which, if completed according to their intentions, would impair the desirability of said neighborhood and greatly depreciate the value of plaintiffs' property; that said wrongful conduct of the defendants would cause plaintiffs an irreparable injury and that plaintiffs have no adequate remedy at law."

GOODE, J. (after stating the facts).—It was agreed by counsel at the argument that prior to the institution of the suit the defendants had set about the erection of a house or flat, two stories in height, planned for separate occupancy by two families, one on the first and one on the second floor. Each story has a separate en-

trance, one at either side of the house. Counsel desire
us to decide whether such a structure is an infringement
of the covenants in the deeds of the several proprietors.
The only covenant said to be broken is the one providing
that not more than one house shall be erected on each
forty feet of frontage; but the other covenants may, of
course, be looked to for enlightenment in interpreting
the one directly involved. They throw no strong light
on the meaning of the latter covenant. The stipulation
against business, prohibits the establishment of any of
several kinds of enumerated occupations within the re-
stricted territory, and also any business or proceeding
not enumerated, which is prohibited by law. The kind
of dwelling-houses which may be built is so far con-
trolled that none costing less than $3,000 can be erected;
and that is the only condition imposed in regard to dwell-
ings. What we have to decide is the force of the stipula-
tion against more than one house on each forty feet of
ground. In other words, we have to determine whether
the structure defendants proposed to erect was more than
one house. In a recent case we went into the subject of
restrictive covenants in deeds where the prohibition was
against more than one dwelling on a lot. [Sanders v.
Dixon, 114 Mo. App. 229.] Such a covenant deals with
the use of the premises and is intended mainly to prevent
plural occupancy of a lot; whereas the present covenant
is not. Hence, an interpretation ought to be given to the
present covenant which will uphold the intention to ex-
clude plural structures rather than plural uses. The
purpose to be derived from the words employed was to
prevent the erection of more than one house on each lot.
In our opinion a building of the sort described is one
house and not two. A decision to the contrary is Ilford
Park Est. v. Jacobs, 72 L. J. Ch. Div. 669. That was a
*nisi prius* case and, as was pointed out in Sanders v. Dix-
on, the ruling is contrary to the judgments of English
appellate tribunals in Kimber v. Adams, 69 L. J. Ch.

Div. 296, and Atty.-Gen. v. Tontine Assn., 44 L. J. Exch. (N. S.) 146.

Plaintiffs cite Harris v. Roraback, 100 N. W. (Mich.) 391. The covenant therein dealt with was against more than one dwelling-house on a lot, and it was held that each story of a two-story flat constituted a dwelling, or a dwelling-house. But manifestly the covenant in that case was designed to prohibit the occupancy of the lot by more than one family as a place of residence. If a house for some business, lawful and not covenanted against, should be erected in the restricted territory, and the upper story constructed for use as a residence, it hardly would be said that the building was more than one house. To our minds this case is clear. If the grantor desired to restrict the use of a single lot for dwelling purposes to a single family, apt words for that purpose could have been used. No intention of the kind can be drawn, with any confidence, from a covenant against more than one house. The upper and lower stories of a flat may be two dwellings, but they certainly are not two houses according to any use of the word "house" prevalent in this country; and in our judgment the best authorities support this view. All the cases are examined in Sanders v. Dixon, not with reference to the precise question now before us, it is true; but they are sufficiently digested therein to show their bearing on the question.

The judgment is affirmed. All concur; *Bland, P. J.,* in a separate opinion.

BLAND, P. J., (concurring).—If, in respect to the kind of a house that might be erected on the plaintiff's lot, nothing more appeared in the covenant than the following clause, "nor shall any dwelling-house costing less than three thousand dollars be erected upon said premises, nor shall any erection be made within thirty feet of the south line of Bartmer avenue, nor more than one

115 app—12

house to be erected on each forty feet frontage," I would be inclined to the opinion that the covenant prohibited the erection of what is commonly known as flats or apartment houses, intended to be occupied by more than one family, and that the intention of the parties to the covenant was that but one dwelling-house, in the strict sense of the term, i. e., a house to be occupied by one family, could be erected upon each forty feet of frontage. But the context of the covenant, I think, precludes this construction. To erect a house and set apart the first floor for the business of a clothing, dry goods or drug store, and the upper floors as a dwelling, would not breach the covenant. So, also, might plaintiff erect a theater or fraternal hall upon her lot without violating her covenant. I think, therefore, a proper construction of the covenant is that it is not intended that only private dwelling-houses might be erected. But that any house, in the ordinary acceptation of the term, i. e., a building divided into floors and apartments with four walls, a roof, a door and chimneys, but not necessarily a dwelling-house, might be erected, provided the same was not used for any of the callings or purposes specially prohibited by the covenant. An apartment house or flats is not specifically prohibited by the covenant, and I think one such house may be erected by plaintiff upon her lot, and when erected it may be occupied by more than one family.