WILLIAM GODFREY et al., Respondents, v. DORCAS M. HAMPTON, Appellant.

St. Louis Court of Appeals, April 19, 1910.

1. BUILDING RESTRICTIONS: Construction: Whether Building is "Flat" is Question of Fact. The word "flat" in a building restrictive covenant, prohibiting the erection of flats or tenement houses, has no technical meaning, and, where the testimony is conflicting as to whether a building is a flat or not, the question is one of fact.

2. ———: ———. The court, in construing restrictive covenants in a deed, should keep in mind the purpose to be achieved by the covenants.

3. ———: ———: Erection of Flats. The purpose of a restrictive covenant in deeds of lots abutting on a street, prohibiting the erection of flats or tenement houses, is to prevent a house from being used by more than one family, each living by itself on different floors, fitted up separately for housekeeping; and a construction of the covenant which will permit a two-story dwelling arranged for the use of two families, each keeping house by means of fixed conveniences on each floor, and each using a common front entrance and each having separate entrances in the rear, will defeat the object thereof.

4. ———: ———: ———: Evidence Held to Support Court's Finding. In an action to restrain a violation of a restrictive covenant prohibiting the erection of flats, evidence *held* to sustain the finding of the court that a certain scheme of improvement projected by defendant would convert her building into one of the character known as "flats," and therefore would violate the covenant.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Paul V. Janis* for appellant.

(1) If the grantor desired to restrict the use of the lot for dwelling purposes to a single family, apt words for that purpose could have been used. A restriction will not be extended by implication to some other matter not within the words of the provision. Pank v. Eaton, 115 Mo. App. 171; Sanders v. Dixon, 114 Mo. App. 229; 1 Jones on Real Property, p. 601, sec. 735. (2) The court will not create a restriction where none was imposed. The law prefers that the use of land in any lawful mode shall be unhampered by restrictive covenants, and therefore courts decline to extend a stipulation limiting the use, beyond the clear meaning of the instrument. Sanders v. Dixon, 114 Mo. App. 171; Grafton v. Muir, 130 N. Y. App. 470. (3) In an equity case the appellate court defers somewhat to the chancellor's findings; but if his findings and judgment are not sustained by the evidence and law the court will proceed to make its own findings and enter judgment as equity and justice require. Givens v. Ott, 222 Mo. 395.

*E. C. Slevin* for respondents.

(1) Restrictions are to be fairly and reasonably interpreted according to their apparent purpose of protection or advantage intended by the parties. 1 Jones on Real Property, p. 601, sec. 735; Sanders v. Dixon, 114 Mo. App. 229. (2) A tenement is "a building, the different rooms or parts of which are let for residence purposes by the possessor to others, as distinct tenants, so that each tenant, as to the room or rooms occupied by him, would sustain to the common landlord the same relation that the tenant occupying a whole house would to his landlord." Am. and Eng. Ency. (2 Ed.), "Tenement"; Musgrave v. Sherwood (N. Y.), 53 Hon. Prac. 311.

GOODE, J.—Defendant Dorcas M. Hampton owns the east 35 feet of lot 5, block 2994 of the city of St. Louis, fronting 35 feet on the north line of Maple avenue, having acquired the property by deed dated October 6, 1908, from Nettie Lippe. The property has on it a two-story dwelling house with a basement, and is number 5221 Maple avenue. The plaintiffs own lots on which, in the same vicinity and on the same thoroughfare, stand their homes. The lot of defendant Hampton was formerly owned by E. G. Butler and others as tenants in common and was by them conveyed on June 8, 1896, to Edward J. Kirby, by deeds filed of record and containing the following covenants:

"This conveyance is made by the said parties of the first part and accepted by the said party of the second part, subject to the following conditions, viz.:

"1st. No building or fence made of lumber shall be erected within twenty feet of the north line of said Maple avenue.

"2d. No building shall be erected on said land which will cost less than $4000.00, nor shall there be erected more than one building on said lot.

"3d. No building shall be erected on said land for business purposes or of the character known as flats, or tenement houses.

"4th. No store, saloon or livery stable shall be maintained or conducted on said land.

"5th. The foregoing conditions to remain in force for twenty-five years and from and after the 1st day of March, 1892."

The conveyance under which plaintiffs hold title contain the same covenants recited from defendant Hampton's deed. Shortly after she acquired her house and lot, she made a contract with defendant Vornholt, who is a builder, to make certain changes in the house so as to adapt it for the occupancy of two families, one to reside on the first and the other on the second floor. The house is in the style known as Queen Anne, has a

single entrance in front, a reception hall and open stairway ascending to the second floor, a stairway leading from a rear hall to the second floor; at the rear of the house are two porches, one at the first and one at the second floor. Defendant, who has no family, intended to arrange the building so she could let the second story to a married couple without children, and the changes she contracted for and which were in progress when the present action was instituted were the installation of a bath and toilet on the first floor, putting an additional door bell at the front entrance to communicate with the second floor, placing a separate electric meter on the second floor and a sink and boiler in the rear room of that floor, enlarging the two rear porches, connecting them with a stairway extending from the second story porch to the floor of the first-story porch, and converting a window in the rear of the second story into a door which would communicate with the second-story porch. While this work was in progress the plaintiffs sued out a temporary writ of injunction to check it, alleging it was a violation of the covenants in the deed in that it was intended to and was changing the house into a flat building. The allegation is that defendant Hampton had entered into a contract with defendant Vorholt "for an alteration or change of said dwelling house into two separate and distinct dwelling houses superimposed one upon the other of the character known as flats." There was no proof made that plaintiff intended to make two front entrances or to separate the front stairway leading to the second floor from the hall which leads into the rooms on the first floor; and for this reason, mainly, it is contended she was not converting the house into flats and hence was not proceeding in violation of any covenant in her deed. The court below took the testimony of experts like the building inspector of the city of St. Louis and builders and real estate agents as to what would be a flat or tenement house and their testimony was highly contradictory;

some of the witnesses insisting no building can be properly designated as a flat unless it has two front entrances, or at least a front vestibule shut off from the rest of the building except passages or stairways leading from it to the different parts. Otherwise stated, the testimony of these witnesses is to this effect: If a house is so constructed that a person who enters it from the front passes into a hallway like the one in question, from which the downstairs rooms open and a stairway leads to the upper rooms, it is not a flat, even though the two floors are fitted up for and occupied by distinct families. Other witnesses did not entirely coincide with this view, one of them saying that generally there was no communication between the upstairs and the downstairs of a flat; but saying also the distinctive feature of a flat was that it contained independent dwellings, one above the other, and if a building was made to conform to that distinction it would be none the less a flat from having a reception hall in the front of the building through which access was gained to the upper floor. Another witness said a flat was a building occupied by two families or more, especially adapted and arranged so one would live apart from the other; that it was essential to have an entrance to each particular floor; "it may be on the side, some in the rear, some in the front; . . . that the great majority of flats were so arranged as to have two front entrances, but lately many houses had been converted into flats by providing for an entrance on the side, if it could not be done in the front, and if a house was arranged in that manner, it was a flat." This witness said further a flat was supposed to be arranged so two families could reside in a house, each family having a separate entrance and one family would not come in contact with the other. This witness was asked and answered as follows:

"Q. That is just what I am getting at. Then we will take a building that has one front entrance; one

common reception hall; you can enter from the reception hall into the parlor, the dining room and go straight back to the kitchen; one staircase leading from that reception hall up to the second floor, so that all parties coming into that house going to the second floor would be able the minute they got in to go into any of these rooms they desired; what would you call that? A. I would call it a flat.

"Q. What is the difference from an ordinary residence? A. A private residence is for one family in its construction."

The word "flat" is thus defined in dictionaries:

"A floor, loft or story in a building; especially a floor which forms a complete residence in itself. Residence flats of the better class are, in the United States, often called apartments. A building divided into flats." Webster's New International Dictionary.

"A floor or portion of a floor; especially one divided into rooms and fitted for the occupancy of a single family; apartment." Standard Dictionary.

"Tenement: A room or more usually a set of rooms; one of several of the same character designed for the occupancy of a family." Standard Dictionary.

We are not aware that the word "flat" has a technical legal meaning so a court can pronounce absolutely one way or the other as to whether a building is a flat or not. No doubt testimony might be taken which so conclusively showed the truth about a building in controversy as to compel a ruling one way or the other. But where the testimony is contradictory, as in the case at bar, the question would seem to be one of fact. Of course the purpose to be achieved by the restrictive covenant should be kept in mind, and looking at the covenant before us, we incline to hold it was inserted in the deeds to the lot in question and other lots in the vicinity, to prevent plural occupancies by families of the houses on the street; that is to say, to prevent the houses from being used by more than one family,

each living to itself on different floors fitted up separately for housekeeping. This purpose to prevent plural occupancy in the sense stated, is suggested by there being a covenant against tenement houses as well as one against flats. A construction of the covenants which would make them tolerate a house arranged as the one in question was meant to be, and for the use of two families, each keeping house for itself by means of fixed conveniences put on both floors, merely because there will be a common front entrance, would defeat the object of the covenant. There were separate entrances in the rear and a part of the plan of improvement was to turn an upstairs window into a door opening onto the rear upper porch, through which the family living upstairs would have access to a stairway leading from the upper porch to the yard. We think a building of that character would cause all the mischief intended to be prevented by the covenant, would depreciate the value of the property and diminish the attractiveness of the neighborhood as a place of residence. In Sanders v. Dixon, 114 Mo. App. 229, 89 S. W. 577, the authorities on this subject were reviewed, though none of them is exactly in point in the present case. See also Pank v. Eaton, 115 Mo. App. 171, 89 S. W. 586. We hold that on the evidence the court below, as trier of the facts, might find the scheme of improvement projected by defendant Hampton would convert her building into one of the character known as flats, and therefore would violate the covenant.

The judgment is affirmed. All concur.