ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1913.

*(Continued from Volume 177)*

## MINNIE T. BOLIN, Appellant, v. TYROL INVESTMENT COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 8, 1913.
Opinion Filed November 4, 1913.

1. BUILDING RESTRICTIONS: Action to Enforce: Evidence: Character of Property in Vicinage. In an action to restrain the erection of an apartment house in violation of restrictions relating to the subdivision in which it was located, evidence that the restrictions would expire in a few years and that property outside of the subdivision and in the immediate vicinity of it was free from restrictions and occupied by a cheap class of houses and by business and manufacturing establishments and that there was a street car line on one of the streets adjoining the subdivision, was immaterial.

2. ————: ————: Single Dwelling: Flat or Apartment House. A flat or apartment house, accommodating a number of families under one roof in separate apartments, is not a single dwelling house within a building restriction providing that no lot owner "shall construct or allow to be constructed more than

Bolin v. Investment Co.

one dwelling on each fifty-foot front of said lot," and hence the erection of such a building should be enjoined as being violative of the restriction.

*Held*, by ALLEN, J., dissenting, that the restriction was intended to prohibit plural structures and not the use or occupancy of one structure by two or more families.

3. ———: Conveyances: Contracts: Construction. While the tendency of the courts is to discourage restrictions on the free alienation of property, yet deeds and other instruments affecting the title to land, like all contracts, are to be interpreted, as nearly as possible, according to the obvious intent of the contracting parties.

4. ———: "Dwelling" and "Dwelling House." There is no difference in meaning between the word "dwelling" and the word "dwelling house," as applied to a building restriction inhibiting the construction of more than one dwelling on each lot.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED (*with directions*).

CAUSE CERTIFIED TO SUPREME COURT.

*A. M. Frumberg* and *A. R. Russell* for appellant.

The erection of an apartment, consisting of six separate family dwellings is violative of a restriction that not more than one dwelling shall be erected on a specified tract. Sanders v. Dixon, 114 Mo. App. 239; Thompson v. Langan, 154 S. W. 808.

*Ephrim Caplan,* and *Rassieur, Kammerer & Rassieur* for respondent.

(1) The law favors the free and untrammeled use of real property. Restrictions in conveyances of the fee are regarded unfavorably and are, therefore, to be strictly construed. Kitchen v. Hawley, 150 Mo App. 497; Sanders v. Dixon, 114 Mo. App. 229. And where the grantor enters into detail specifying certain matters as interdicted, it is to be presumed, if nothing to the contrary appears, that buildings of a nature not thus excluded are intended as a proper use of the

property. Kitchen v. Hawley, supra, p. 503; Park v. Eaton, 115 Mo. App. 171. Buildings other than "dwelling houses" are not subject to restrictions referring to "dwelling houses." Kitchen v. Hawley, supra. (2) Restrictions as to construction and restrictions as to user are different and distinct. Land Co. v. Investment Co., 169 Mo. App. 715; Stone v. Pillsbury, 167 Mass. 332; Sonn v. Heilberg, 56 N. Y. S. 341. (3) Where the restriction has reference only to the construction of a permitted structure, but is silent as to user, and describes the building which may be construed in terms which may have a general significance, such terms will be given the general meaning. Cases cited, point II, supra; Gillis v. Bailey, 21 N. H. 149; McMurty v. Phillips, 103 Ky. 308; Holt v. Fleischman, 75 N. Y. A. 593; Bates v. Logeling, 122 N. Y. S. 251; Ivarson v. Mulvey, 179 Mass. 141. And not be given a narrow or restricted meaning unless such intention is clearly expressed. Heysen v. Lichtenstein, 142 N. Y. S. 596; Linwood v. Van Dusen, 63 Ohio St. 183; Sayles v. Hall, 210 Mass. 281; Beckwith v. Pirung, 119 N. Y. S. 444; M'Dougall v. Schneider, 118 N. Y. S. 861; Gannett v. Albree, 103 Mass. 372. (4) The term "dwelling house" is a general term merely descriptive of a structure suitable for living purposes, irrespective of how it may be occupied. And one dwelling house may be so constructed as to contain separate apartments, each of which may be a dwelling, yet the whole be only one structure, and be in fact one dwelling house. Kitchen v. Hawley, 150 Mo. App. 497; Holt v. Fleischman, 75 N. Y. A. 593; Bates v. Logeling, 122 N. Y. S. 251. And other cases cited in Point III (a), supra.

STATEMENT.—Respondent here, proposing to erect an apartment house on a certain lot in what is known as Chamberlain Park, a subdivision of the city of St. Louis, the apartment house to be a three-story brick structure, containing six separate apartments, sepa-

rate residences or dwellings for six separate families, appellant, a lot owner in the subdivision, instituted this action to restrain the erection of the building, claiming that its erection would be in violation of certain restrictions contained in the deeds under which respondent and all other owners in the subdivision hold the property upon which the structure is proposed to be erected and which restrictions are to remain in force up to the 31st day of December, 1920. The restrictions directly pertinent to the consideration of this case are (1) that no lot owner in the subdivision ''shall construct or allow to be constructed in the premises above described any dwelling house less than two stories in height; (2) shall construct or allow to be constructed more than one such dwelling on each fifty feet front of said lot.'' There are other restrictions in the deed which are not here so directly involved, and which it is not claimed would be violated by the structure proposed to be erected, but we set them out by way of illustrating the character attempted to be fixed upon the subdivision. They are as follows: That no lot owner in the subdivision '' (3) shall construct or allow to be constructed thereon any dwelling to cost less than $4000 in cash, nor locate or erect such dwelling nearer than thirty feet to the line of the street on which such dwelling fronts; (4) shall construct or allow to be constructed any stable, shed or outhouse nearer to any public driveway than 100 feet; (5) shall construct or allow to be constructed or erected or to exist any nuisance or any livery stable or manufacturing establishment of any kind on said premises; (6) shall construct or allow to be constructed, used or occupied any grocery store, barroom or business place for the bargain and sale of any kind of merchandise on said premises.''

The answer admitted that it was the intention of respondent, defendant below, to erect on the lot, which has a frontage of about 200 feet on Etzel avenue where it runs into Page avenue and about 200 feet frontage

on Belt avenue, "a beautiful and costly building to be for family living purposes exclusively and so constructed as to have the entrance on Etzel and an entrance or exit at the rear of the building facing the alley; that plaintiff . . . notified and demanded of defendant not to erect any habitation other than a single private residence constructed for one family only and not to erect the aforesaid building as being in alleged violation of certain alleged restrictions thereon." Setting out the restrictions as above, defendant denies that the proposed building violates any of them. It is further set out that even if the alleged restrictions are violated by the erection of the proposed building, they are inapplicable for the reason that defendant's lot is on a projecting corner of the park, on an exposed and public corner surrounded and abutted by public streets maintaining heavy and noisy traffic, including a noisy and busy street car line and improved, unrestricted property consisting of business houses and stores and numerous small, cheap houses, many on the same side of the street and in the same block in which is the defendant's lot, and that so far as concerns the defendant, the alleged restrictions, if violated by the building it proposes to erect, are oppressive and unconscionable and thereby inapplicable, inequitable and unenforceable; that the restrictions will expire December 31, 1920; that when in 1887 the restrictions were imposed and for some time thereafter, the section was open country or built up with residences but that the district is now fully made up and largely crowded with small flats and cheap stores, particularly around the point upon which respondent is erecting its building; that if respondent is compelled to erect no other building for living purposes than a single, private, residence, constructed for one family only, soon after it is erected and long before such a building can live its usual and rightfully anticipated life, the restrictions will have expired and all the sur-

rounding and abutting property will have further developed or disintegrated into cheap residence and business property and leave any such new and costly building as required by plaintiff undesirable, inappropriate and burdensome upon the owner and deprive respondent of its reasonable and rightful and fullest legitimate use of the land.

The new matter in this answer was replied to and the cause tried before the court as in equity.

Without going into the testimony in detail, it is sufficient to say that that introduced on the part of appellant showed that what is known as Chamberlain Park, comprising four full city blocks and the larger part of three other blocks, these blocks cut up into lots, there being over two hundred lots in the subdivision, judging by the plat in evidence, has been in great part built up and occupied for the most part by costly residences, a few of them of the minimum valuation required, several of them valued at from $25,000 to $35,000; that it was strictly and entirely a residence district or place, the buildings, private residences, occupied by single families, with one exception, namely, a hotel or boarding house, which it appears had been erected over the protest of the other property owners, and is the building involved in the decision of our court in Kitchen v. Hawley, 150 Mo. App. 497, 131 S. W. 142. There is no dispute over the fact that when the property owners of Chamberlain Park were advised of the intention of respondent here to erect this building, they promptly notified the officers of respondent that they would contest their right to erect it as being in violation of the provisions of the deed under which respondent held its property, and that if they insisted upon going on with their plans, an injunction would be applied for. Respondent announcing its intention to proceed with the erection of the building and beginning to excavate for that purpose, this suit was instituted to enjoin the further prosecution of the work.

It was in evidence that on the other side of Etzel and Page avenues but outside of Chamberlain Park, the neighborhood was thickly settled with a miscellaneous class of buildings, some cheap, others of a better class; stores and business houses of different kinds were there; a line of street cars run along Page avenue, but beyond the hotel or boarding house referred to in Kitchen v. Hawley, supra, no buildings which were thought to violate the restrictions had been erected within the boundaries of Chamberlain Park. The testimony introduced on the part of defendant, respondent, was to the effect that the building proposed to be erected was of the kind set out in the answer, that is to say, what are called flats or an apartment house, with a single entrance in the center, fronting Etzel avenue, where Page avenue runs into it, but that it was to be composed of six different and distinct apartments or dwellings, each adapted to the use of a family and separated from each other in the manner usual in such structures.

At the conclusion of the case, the trial judge, sitting as chancellor, dismissed the suit. It is from this that plaintiff below, having filed her motion for new trial and excepting to its being overruled, has duly perfected appeal to this court, assigning as error the action of the court in dismissing the case.

REYNOLDS, P. J. (after stating the facts).— This case was determined in the lower court entirely upon the question as to whether the erection of the proposed building was in violation of the restrictions covering the subdivision, and which we have set out, and which forbid the erection of more than one dwelling on each fifty-foot frontage of the lots in the subdivision.

The points as to the change of the character of the neighborhood, the fact that the restrictions were to expire in December, 1920, and that the adjoin-

ing property and the property on the opposite side of one of the streets running along the subdivision were free from restrictions and occupied by not only a cheap class of houses but by business and even manufacturing establishments and that there was a street car running along one of the streets adjoining the subdivision, were disregarded by the learned trial judge; who ruled that testimony of that character, not relating to the subdivision itself, was immaterial. This ruling was entirely correct and in accordance with what our court held in many cases, particularly in Spahr v. Cape, 143 Mo. App. 114, 122 S. W. 379; Noel v. Hill, 158 Mo. App. 426, 138 S. W. 364, and Thompson v. Langan, 172 Mo. App. 64, 154 S. W. 808, and other cases there referred to.

Hence the point in decision here turns entirely upon the question as to whether the erection of this apartment house is in violation of the clause of the restrictions contained in the deed under which all the lot owners in this subdivision hold their property. That clause, to repeat, is, that no such owner "shall construct or allow to be constructed more than one such dwelling house on each fifty foot front of said lot," "such dwelling" here referred to, as set out in the first restricting clause, being "any dwelling house less than two stories in height," or, as repeated in the third clause, "any dwelling to cost less than $4000 in cash.

The learned trial judge relied in great part in the determination of this cause on what he understood to be the ruling of this court in Kitchen v. Hawley, supra, and learned counsel for respondent likewise lay great stress upon that decision as well as upon the decisions of our court in Sanders v. Dixon, 114 Mo. App. 229, 89 S. W. 577, and Thompson v. Langan, supra. Counsel seek to draw a distinction between the words "dwelling" and "dwelling house." Plainly the covenants are directed against the erection of more than a single building to be used as a single dwelling, on a single lot.

A flat or apartment house is not a single dwelling house, within the meaning of these covenants.

Referring to Kitchen v. Hawley, supra, an examination of the facts and of the point in decision in that case, shows that the erection of a hotel or boarding house was contested on the ground that a hotel was not a dwelling house and that the restrictions prohibited the erection of any sort of a building other than a dwelling house. Our court, speaking through Judge NORTONI, said (1. c. 503): "We find no word in the deed, or so much of the context thereof as is set forth in the petition, which purports to inhibit the erection of a hotel building on the property in question. Indeed, it is implied from the fact that the general words of prohibition are omitted and only a few structures, together with certain enumerated occupancies pointedly inhibited, that the grantor intended to permit the erection of a hotel." And again it is said (1. c. 505): "We are unable to discover anything from the context of the instrument as set forth in the petition indicating an intention on the part of the grantor to exclude a hotel any more than it indicates an intention to exclude a house of worship or an institution of learning." That is the point of decision there and it in no manner whatever determines the question as to the number of dwellings which can be put on a single lot, that is, as to whether more than one dwelling can be located upon one lot.

In Sanders v. Dixon, supra, the restriction involved was, "No dwelling shall be erected on said realty whereof the main part is less than two stories in height, nor shall there be erected more than one dwelling on each lot." Construing this clause, our court, speaking through Judge GOODE, held (1. c. 247): "The word 'dwelling' is one of multiple meanings; but the particular meaning intended to be expressed by it when used in a given instance, may be rendered obvious by the context or attendant circumstances; and usually re-

sort must be had to those aids to interpretation to ascertain what is meant. In its broadest significance the word denotes a building used as a settled human abode; and, in common parlance, when not qualified, conveys the notion of a home; though a suite of rooms occupied by one man may be his dwelling house.'' After referring to and distinguishing the decision of the Supreme Court of Illinois in Hutchinson v. Ulrich, 145 Ill. 336, and refusing to follow that, Judge Goode refers approvingly to Gillis v. Bailey, 21 N. H. 149. In that case the covenant was that only one single dwelling house with sheds, etc., should in twenty years of the date of the conveyance be placed on the lot. The purchaser built a house two stories in height, designed to accommodate three families but fitted up and actually occupied by six families. The question for decision was the meaning of the phrase ''a single dwelling house.'' That was decided in effect to mean a dwelling intended for and constructed for the use of one family. As the structure actually erected was held to be three separate, distinct residences or dwellings, the Supreme Court of New Hampshire held that its erection defeated the purposes of the covenant. Judge Goode adds, in commenting on this New Hampshire case, that ''Weight was allowed to recitals in the deeds of conveyance going to show the grantors intended to prevent crowded buildings and to preserve open spaces about the residences.'' Citing many other cases the conclusion reached by Judge Goode and concurred in by all of our court, was that the erection of the proposed flat or apartment house was in violation of the restriction. In arriving at this conclusion, Judge Goode expresses the underlying reason for holding a flat or apartment house in violation of the covenant against a single dwelling house in such apt words that we can do no better than quote them as found on page 252: ''A house arranged for plural occupancy is much more likely to be used by several families, and to attract an unwelcome

class of inhabitants into a restricted residence district, than a house arranged for single occupancy; and the former house might be held a breach of a covenant against more than one dwelling on a lot, when the latter would not be.''

In Pank v. Eaton, 115 Mo. App. 171, 89 S. W. 586, it is held, referring to Sanders v. Dixon, supra, that ''the erection of a flat, two stories in height, planned for two families, one on first and one on the second floor, is 'one house' within the meaning of a restrictive covenant in the owner's deed providing against the erection of 'more than one house' on each lot.'' In that case the restrictive clause differed from the one in Sanders v. Dixon and from the one before us, in that it provided that ''not more than one house'' should be erected on each forty foot frontage. The distinction between Pank v. Eaton and Sanders v. Dixon, supra, rested upon these words. It is there said by Judge GOODE, who also wrote that opinion, that the restriction in Sanders v. Dixon was ''against more than one dwelling on a lot. . . . Such a covenant deals with the use of the premises and is intended mainly to prevent plural occupancy of a lot; whereas the present covenant is not. . . . The purpose to be derived from the words employed was to prevent the erection of more than one house on each lot. In our opinion a building of the sort described is one house and not two.'' Referring to Harris v. Roraback, 100 N. W. 391, a decision by the Supreme Court of Michigan, Judge GOODE states that ''the covenant therein dealt with was against more than one dwelling house on a lot, and it was held that each story of a two-story flat constituted a dwelling or a dwelling house. But manifestly the covenant in that case was designed to prohibit the occupancy of the lot by more than one family as a place of residence. . . . If the grantor desired to restrict the use of a single lot for dwelling purposes to a single family, apt words for that purpose could have

been used.   No intention of the kind can be drawn, with any confidence, from a covenant against more than one house.'' Thus, the distinction is clearly pointed out between Sanders v. Dixon, supra, and the case before the court in Pank v. Eaton, to rest on the fact that in Sanders v. Dixon the words were ''a dwelling house or dwelling,'' ''more than one dwelling  on a lot,'' whereas in Pank v. Eaton the restriction was against ''more than one house.''

In Thompson v. Langan, supra, we considered all these cases and the point in decision there was that a hotel or flats proposed to be erected violated the restriction in the deed against the erection of more than one dwelling on each fifty-foot lot.

There we held that an apartment house or flat is not a dwelling house, meaning by that it is not a single dwelling, and that the erection of flats within the boundaries of Hamilton Place, the subdivision in question there, was in violation of the covenant which provided that no more than one dwelling should be erected on each fifty foot of the subdivision, inasmuch as the flat or apartment house proposed to be erected was composed of, constituted several dwellings.

Looking outside the decisions of our own court, we find in Brigham v. Mulock Co., 74 N. J. Eq. Rep. 286, a decision by the Court of Chancery of New Jersey, that it is held (1. c. 291), that the covenant forbidding more than one building for a dwelling house to be erected upon each lot, is broken by the erection of what is commonly known as a double house, that is two houses under one roof.   Says Vice-Chancellor Leaming, who wrote the opinion, ''such a structure is as much two buildings for dwelling  house purposes as though separate roofs existed.''

In Schadt v. Brill, 139 N. W. 878, the Supreme Court of Michigan held that a building restriction prohibiting the erection of any store, factory or building other than a ''dwelling house,'' with usual appurte-

nances, and declaring that no dwelling house "shall be erected at a cost of less than $5000;" and that such "dwelling house" shall not be less than two and a half stories high, etc., prohibits the erection of a double house with one entrance; a "dwelling house" meaning a house constructed for the dwelling of a single family.

The same question was before that court in Harris v. Roraback, supra, as noted by Judge Goode in the Park case, supra.

While the tendency of the courts is to discourage restrictions on the free alienation of property, it is also well settled that deeds and other instruments affecting title to land, like all contracts, are to be interpreted, as nearly as possible, according to the obvious intent of the parties contracting. It stands uncontradicted in this case that the respondent bought with full notice of the restrictive clauses in these deeds. It is not pretended that it was in any manner imposed upon or misled. The conduct of its officers shows that they were so far doubtful of their right to proceed that they stopped at the inception of the enterprise and very properly left the question to be determined by the courts before proceeding further. The evidence in the case shows that with the single exception of the hotel or boarding house, which was permitted by the decision of our court in Kitchen v. Hawley, supra, the whole of this Chamberlain Park subdivision is occupied exclusively by private residences, single dwelling houses, each building in the occupancy of one family. However sightly, expensive and handsome the proposed apartment house may be, its erection would be a plain violation of the idea running through the deeds setting off this place, by which it was intended to be made a place of private residence for the occupancy of private families, each dwelling in their own home and under their own roof tree. Duplex houses, apartment houses, flats, are

clearly not a single dwelling house within the letter or spirit or intention of these deeds.

The prevailing idea to be gathered from these restrictive covenants is, that when a dwelling is to be built, it is to be a single dwelling—a single dwelling house, not, as in Pank v. Eaton, supra, "one house." In the case before us the words are "any dwelling house;" "one such dwelling;" "a dwelling;" "such dwelling." Always in the singular.

The point is made by counsel for respondent that there is a difference in meaning between the word "dwelling" and the word "dwelling house." We recognize no such difference.

On this ground and in the light of the decisions of our court and of other courts which have considered the matter, we conclude that the erection of the proposed sextuple building, flats or apartments would be in violation of the restrictions in the deed under which respondent holds title to its lot.

The circuit court, under the evidence in the case should have awarded the injunction. Its dismissal of the suit was error. Its judgment to that effect is reversed and the cause remanded with directions to the circuit court of the city of St. Louis to enter up a judgment in favor of plaintiff and award the injunction as prayed for against the erection of the proposed building. *Nortoni, J.,* concurs; *Allen, J.,* dissents.

## DISSENTING OPINION.

ALLEN, J.—I think that the restriction here in question is designed to prohibit the erection of more that one building upon a lot of the size mentioned; that it is intended to prohibit plural structures rather than the use or occupancy of one structure by two or more families.

Had the latter been intended, it would have been quite easy to express such intention in clear, unambiguous language. It is true that this matter inheres with some doubt, with respect to the intention of the parties to the deed, but it is a well recognized rule that where such a doubt exists as to the meaning of language thus employed in a deed, such doubt should be resolved against the grantor and in favor of the grantee. Where such language will admit of two constructions, the one less favorable to the grantee should be adopted. [See Grooms v. Morrison, 249 Mo. l. c. 554, 155 S. W. 430; Linville v. Greer, 165 Mo. 380, 65 S. W. 579.] If we here apply this rule, it would appear that we would be obliged to say that the grantee took the premises, with restrictions as to the use thereof, which prohibited only the erection of more than one structure or building, of the general character mentioned, upon one such lot.

I therefore dissent from the majority opinion; and as I deem the decision herein to be contrary to that of the Supreme Court in Grooms v. Morrison, 249 Mo. 544, 155 S. W. 430, and in Linville v. Greer, 165 Mo. 380, 65 S. W. 579, as well as to other like decisions of that court, I respectfully request that the case be certified to the Supreme Court for final determination.