AUSTIN v. RICHARDSON et al.   (No. 7442.)

(Court of Civil Appeals of Texas.   San Antonio.   Nov. 25, 1925.   Rehearing Denied Jan. 6, 1926.)

1. Injunction ⬅62(1)—Injunction against using restricted private residence as "apartment house" held proper.

Where covenants in deed to residence property restricted use as lodging, rooming or boarding house, or as business enterprise, remodeling residence, and renting part of it, while owner and family occupied upper part thereof, made such premises apartment house, used as business enterprise, and granting injunction against such use was proper.

2. Covenants ⬅51(2)—Courts favor creation of restricted residential districts.

Courts favor creation of restricted residential districts in cities.

3. Injunction ⬅128—Evidence held to support finding that restricted residential property had been converted into apartment house.

In suit to enjoin converting restricted residential property into apartment house, and using it as lodging, rooming or boarding house, contrary to covenants in deed, evidence *held* to support finding of fact that house in question had been converted into apartment house and was used for business purposes.

4. Covenants ⬅84 — Purchaser of property held bound by restrictive covenants of which he had notice.

Purchaser of residential property restricted by contractual covenants taking with notice, is bound thereby.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by E. W. Richardson and others against E. L. Austin and others for an injunction.   Judgment for plaintiffs, and the named defendant appeals.   Affirmed.

Leonard Brown, of San Antonio, for appellant.

W. B. Teagarden and Bruce W. Teagarden, both of San Antonio, for appellees.

COBBS, J.   Appellees sued appellant to enjoin him from further violating the terms of restrictions contained as covenants in a contract under which appellant held, owned and possessed certain premises in what is known as the Woods and Paschal subdivision, block 1752, facing south on East Park avenue, in the city of San Antonio. Under the covenants and restrictions in the deed under which appellant held it is alleged that the addition was platted out and put on the market for sale with the general plan and intention of making of it an exclusive residential district for private homes only, and that under these restrictions lots were sold to other persons, and expensive private residences were erected, used, occupied, and enjoyed as homes.

It was charged by appellees that during the ownership of the property in question by Rabe and Dreyfus the residence was converted into an apartment house, and that one of said apartments was continuously rented to families, thus locating two families in the building, and it was also charged against Austin that he, with his family, occupied the house, and had converted it into a boarding, lodging, and rooming house, which constituted an additional violation of the covenants.

The relief requested was a perpetual injunction against each and all defendants and their grantees, assigns, agents, and tenants, and all persons who may hold under them, from erecting or conducting an apartment house, boarding house, rooming house, or any other character of business in said house or on said lots, and from using, leasing, or renting said lots or premises for any other purpose except as a residence for a single family, and from violating any other of said covenants, and for costs, and for general and special relief.

The defendants, in separate answers, in substance, denied that the change in the building into a two residence or duplex house was a violation of the restrictions, and Austin denied that the use he was putting the house to violated any of the restrictions, and also asserted that, since the district was laid out and sold, there had been such a change in the community as would make it inequitable to enforce them.

There was a trial by the court without a jury, resulting in judgment for plaintiffs, with perpetual injunction against the things complained of, from which this appeal was perfected by defendant, Austin, only.

There were no requests made of the court to file findings of fact or conclusions of law, but that part of the decree pertinent to the issue is:

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs, E. W. Richardson and S. O. Applewhite, have judgment against the defendants H. Rabe, Samuel Dreyfus, and E. L. Austin, and their heirs, assigns, legal representatives, agents, and tenants, perpetually enjoining them, and each of them, from hereafter using lot No. 5 and the west half of lot No. 6, in new city block No. 1752, in the city of San Antonio, Bexar county, Tex., the property in question in this suit, for an apartment house, boarding house, rooming or lodging house, or for a dwelling of any kind designed, intended, or used for the accommodation of more than a single family; and perpetually enjoining them, and each of them, from using the building now existing on said premises for any of the purposes above enumerated, or for any purpose except as a residence for a single family; and perpetually enjoining defendant E. L. Austin and his agents, assigns, and successors in title from taking,

keeping, or accommodating on said lots and premises any boarders, lodgers, or roomers, and requiring him to discharge and turn off all roomers, lodgers, or tenants now permitted or accommodated by him on said premises, and requiring defendant E. L. Austin to remove the partition wall or obstruction on the first floor of the said building, which wall or obstruction was erected by H. Rabe as part of the work to change the house into two apartments, and which wall or obstruction extends from near the front door backward to a connection with a pre-existing partition, and which wall or obstruction incloses the staircase so as to prevent access to it from the interior of the lower story, and prevents access from the lower to the upper story from the inside of the building. * * *

"And it is further ordered and decreed that the plaintiffs, E. W. Richardson and S. C. Applewhite, and the officers of this court have and recover of and from the defendants H. Rabe, Samuel Dreyfus, and E. L. Austin all costs of this suit, except as hereinbefore otherwise expressly adjudicated, and that execution issue therefor.

"And it is further ordered and decreed that the writ of injunction, in terms of this judgment, be issued and served on said defendants, as provided by law, and that any and all writs and process authorized by law be issued and executed to carry this judgment into effect."

The covenants and restrictions contained in the deed were as follows:

"Subject, however, to the following conditions, covenants, and restrictions to the faithful observance of which by the acceptance of this deed said grantee above named firmly binds and obligates himself, his heirs and assigns, to wit:

"(1) That the said lot shall never be used for any purposes other than for residence purposes, and that no store, shop, saloon, bakery, apartment house, or other business enterprise shall be conducted or erected thereon.

"(2) That said residence building erected or placed on said lot shall be a two-story building, the cost of contract price of which shall in no case be less than $3,000.

"(3) That said lot shall never be sold or in any manner transferred or conveyed to Mexicans or negroes.

"It is expressly agreed, moreover, that these covenants and restrictions shall run with the land in favor of the owner of said lot above described, respectively, and also in favor of the owner or owners, respectively, of those certain lots fronting north on the south side of said East Park avenue in the city block situated immediately south of said block (new city block 1752), in which the lot hereby conveyed is located, and, these covenants being made for the benefit of all said property, the respective owners, now or hereafter, of any of said lots in either of said blocks shall have full rights to the benefits of said covenants and restrictions, and shall be authorized to enforce in their own right and names, respectively, all remedies afforded by law, whereby these grantors might enforce said covenants and restrictions or prevent infraction thereof, or may recover all lawful damages suffered by them by reason of such infraction."

This whole case revolves around the question as to whether or not appellant, or those under whom he holds, breached the covenant in respect to the "apartment house or other business enterprise" clause. The court found that said covenant was breached, under ample testimony.

When the house was first built it complied in all particulars with the covenants and restrictions. Subsequently Rabe began remodeling the house by putting in extra doors and back stairs, so as to make it a double house, or an apartment house. He also put in an extra bathroom, and erected a partition wall on the first floor to inclose the staircase so as to prevent access to it from the interior of the lower story, and to prevent access from the lower to the upper story from the inside of the building. An extra door was also cut in the front of the house, so as to make the two apartments entirely separate. While these changes were being made, appellees had their attorney write Mr. Rabe the following letter, which was delivered to him:

"San Antonio, Tex., Dec. 1, 1920.

"Mr. Henry Rabe, No. 411 East Park Ave., San Antonio, Tex.—Dear Sir: We represented Woods and Paschal at the time they disposed of certain property in the Woods and Paschal subdivision of block 5, new city block No. 1752, and since then the purchasers from said Woods and Paschal, in so far as to say that the conditions in the deed to the purchasers have not been violated.

"The deed to you, as well as the other purchasers of this subdivision, as you are aware, contained certain conditions, one of which, as you know, provides that the lot should never be used for any purpose other than for residence purposes, and that no apartment house should be erected thereon.

"Our attention has been called to the fact that you have converted, or are converting, your premises into an apartment house. We have been advised that such changes as you are making constitute the same an apartment house. The deed under which you hold contains the following further provisions: That the restrictions mentioned therein run with the land in favor of all the lot owners. The remedy is either by injunction or for damages.

"We have to advise you that from the facts submitted to us you have violated the express conditions of the deed under which you hold, and, if persisted in, will subject you to the remedies given all the purchasers in said deed. We wish to put you on notice so that no claim could possibly be made by you in the nature of a waiver by the other lot owners.

"Yours very truly,
"[Signed]    Clamp, Searcy & Clamp."

After being so notified, he continued the work of remodeling, and finished the work before this suit was brought, and thereafter rented the downstairs portion of the residence out, and he and his family occupied the upper portion. This condition existed until the house was sold to appellant, Aus-

tin, and the lower portion of the house was being rented for $80 or $85 per month.

The house was originally built by Dr. B. F. Smith, who occupied it for a couple of years as his private residence, and then sold it to Rabe. The suit was originally filed against Rabe, and it was pending when the house was purchased by Austin, who had full notice of the facts and this pending suit.

Mrs. E. L. Austin, wife of appellant, E. L. Austin, testified that three young ladies rent one big room—a sleeping porch—for which they pay her $35 a month. In the morning they make coffee and toast in their room. Sometimes they eat in their room, and sometimes they do not. She testified further that, of the ladies who stay with her, one is in business, and the other is a clerk in the Guarantee Shoe Company; that there are thirteen rooms in her house; that down stairs she has a living room, conservatory, dining room, kitchen, and bath.

She testified further:

"I have three young ladies with me. Two of them have been living with me for five years. They lived with me on San Pedro avenue; lived over there four and a half years—and also a Mr. Connor, who teaches my little boy music. When we first moved there, we had a lady and her daughter stay with us. Well, I had the Williams girls and Miss Littlefield, and Mr. Collins, but I didn't have them all at the same time. I have the three young ladies there. Sometimes they cook their breakfast there and sometimes they don't. They don't cook their supper when they come back at night—bring something, or eat supper down town. They have no dining room table or dining room. I don't suppose they need a table. They have a little table in the kitchen, but they don't use it very much for a kitchen—have a gas stove in there. If they desire to, they can cook whatever they please in there. Sometimes when they go to church, and don't want to eat in town, I invite them in, just as a family, and they eat with us. Charge them for that? No, indeed! They are giving me $35 for the apartment or room; not an apartment, it is a room, and they, of course, use the bath. They may all use the upstairs bath just as much as the downstairs. They have access to the bath, kitchenette, or kitchen. All use one room—a sleeping porch—with two beds in it. That one room they have is a sleeping porch. It is a great big, closed-in porch, and they use that as their room, for which they pay me $35 a month. Then I have Mr. Connor rooming there. He teaches my little boy music. I charge him $12 a month. He just sleeps there. He goes out every morning and comes in at night, only on those afternoons when he teaches my little boy there. He doesn't teach there. He teaches my little boy music. He rents a room there, sleeps there, but never ate a meal with me. I have nobody else there at present. There are thirteen rooms in the house. I also have a kitchen down stairs; yes, sir.

"There is a little gas stove, not in the room occupied by the young ladies. It is in just a little room where I guess Mr. Rabe used it as a kitchen, I don't know. I use it sometimes and sometimes I don't, and use the bath up there, and down, too, just like one family. When nobody is there but me I use that little gas stove sometimes, just go in and make a cup of coffee or fry my steak or something like that. I use the up stairs as much as I do down stairs, because Mr. Austin is gone. He is traveling, never at home only in the week end. Only one room the young ladies have exclusive use of, but they use the down stairs just as the family. They come down there and play the piano. They entertain their company in my living room. They don't eat meals with me very often."

[1] The findings of the trial court and the judgment based thereon are fully supported by the facts and the law that the improvements placed thereupon constitute "an apartment house," and are used for a "business enterprise." We cannot escape the trial court's finding. It was not shown to be a private residence alone. But the facts and its construction distinguish it sharply from a home, and place it within the class of boarding houses and apartments used for the purpose of raising revenue.

[2] The courts recognize with favor that people may laudably desire to create restricted residential districts where they may enjoy home life apart from any class of business environments. There are so many arguments in favor of such a reasonable and laudable purpose that we will not undertake any extended discussion thereupon. San Antonians are proud of their beautiful city, its parks, its clean river, its beautiful homes, and residential and restricted districts, where people desire to come in neighborly contact with others of like tastes, away from the suggestion of business care and commercialism, and where, having finished for the day their downtown busy cares and worries, they may turn to the beauties and delights of the privacy of home life, and the inspiring joys that one enjoys in his private castle, and the law favors them. Wilson v. Gordon (Tex. Civ. App.) 224 S. W. 703; Curlee v. Walker, 112 Tex. 40, 244 S. W. 497; Oliver et al. v. Forney Cotton Oil & Ginning Co. (Tex. Civ. App.) 226 S. W. 1094; Bolin v. Tyrol Investment Co., 178 Mo. App. 1, 160 S. W. 588, 164 S. W. 259; Id., 273 Mo. 257, 200 S. W. 1059, L. R. A. 1918C, 869; Morrison v. Darr (Mo. Sup.) 201 S. W. 1147.

It was such an apartment house within the meaning of the contract of restriction as rendered it obnoxious to its terms. C. J. vol. 3, pp. 250, 251; Sayles v. Hall, 210 Mass. 281, 96 N. E. 712, 41 L. R. A. (N. S.) 625, Ann. Cas. 1912D, 475; Schadt v. Brill, 173 Mich. 647, 139 N. W. 878, 45 L. R. A. (N. S.) 726; Elterich v. Leicht Real Estate Co. (1921) 130 Va. 224, 107 S. E. 735, 18 A. L. R. 441; Paine v. Bergrose Development Corp. (1922) 119 Misc. Rep. 796, 198 N. Y. S. 311.

[3, 4] As to whether the house in question was converted into an apartment house and used for rental or business purposes was a

question largely of fact, which was found by the trial court against appellant, and we find no reason to disturb those findings. Appellant took this property under covenants that were contractual, and cannot escape its binding force.

There are no reversible errors assigned, and the judgment is affirmed.